the allegation that the present reissue was obtained under false representations is not warranted by anything in the proof, and the allegation itself is hardly adequate: it is peculiar. An allegation of this nature should be made in distinct language, without equivocation; and, if relied upon at all, it should be the subject of very distinct proof. One thing I might as well state here, in relation to the action at law put into the complainant's bill. If I recollect right, there was no record filed in the case—no proof offered on that subject; and, so far as the answer sets up new matter, of course I take the answer as true. I exceedingly dislike to see an allegation in relation to an action at law made any portion of the foundation of a proceeding in equity, unless the action at law was tried thoroughly; unless it was not only bona fide, but the whole steps taken show, so far as the record can show, a bona fide trial and complete judgment. In this case, that does not appear, and the inference the court would be compelled to draw is, that there was something about the action at law which should deprive it of weight in this proceeding. It at least lacks those elements which alone can give it any strength as the foundation for an injunction. It is not necessary, however, as claimed by the counsel for the defendants, in order to empower a court of equity (at least a court of the United States, sitting in equity) to pronounce judgment in favor of the patentee, that there should first be a trial at law, and we were a little surprised to see that pressed by the counsel for the respondents. The courts of the United States are authorized to take up a patent, and, upon final hearing, to pass upon it, without reference to the fact whether it has been before a jury or not.

Now, in regard to preliminary injunctions in patent causes, there is a rule which I have endeavored to explain and enforce in the case of Mitchell v. Barclay [Case No. 9,659], in this court; that one of three things must always exist in order to entitle a complainant to a preliminary injunction, and they are these: either there must have been an exclusive possession of the monopoly, as against the public, for some period of time; we might say for some considerable period of time, but we do not choose to use any limiting in terms upon that subject. But for some time there must have been an acquiescence of the public in the exclusive monopoly of the patentee or his assignees. That exclusive possession acquiesced in by the public, as it must be, if exclusive, raises the presumption, it being an adverse claim to the public, that the patentee has a valid title to the invention which purports to be secured by the patent. The length of time necessary to make that exclusive possession available in a motion for a preliminary injunction must, of course, depend somewhat upon the nature of the invention, the extent

to which it would be used, and the acquiescence of the public must, of course, depend upon what portion of the public would have any occasion to use it; because the "public" means that class of persons who would be likely to use the invention. I say, there must be, either, first, exclusive possession of some kind by the patentee or his assignees; or, second, there must have been a judgment at law, approved by the judge who tried the case; or, third, there should have been a final hearing in equity, which is quite equivalent to a judgment at law, with the approval of the court. These questions, however, relate to the application for a preliminary injunction. Where one or other of these facts does not appear, I have not known any instance of a preliminary injunction being granted. Where one of these facts does appear, and it is proved to the court—unless some question is raised by the respondent to prevent it—the injunction usually goes. But these remarks do not apply to a judgment on final hearing. On such a hearing, the court will pass upon the questions raised, whether of law or fact, whether there has been any trial before a jury or not. But where there has been a thorough trial at law, and a verdict for the patent, approved by the court, it is usual and proper to make it the subject of an allegation in the bill. Where there has been an incomplete or collusive trial at law it should never appear in the bill, for instead of strengthening the cause, it is calculated to cast suspicion upon it.

[NOTE. See Doughty v. West, Cases Nos. 4,028 and 4,030.]

## Case No. 4,030.

### DOUGHTY v. WEST, BRADLEY & CARY MANUF'G CO.

[8 Blatchf. 107; 4 Fish. Pat. Cas. 318.] [1]

Circuit Court, S. D. New York. Dec. 29, 1870.

COSTS IN EQUITY SUITS — DOCKET FEES—FEES OF MASTER.

1. On a reference to a master, in a suit in equity, under an interlocutory order, before final hearing, no docket fee of $20 is taxable to the party to whom costs are awarded, as a docket fee on a final hearing in equity, under the act of February 26, 1853 (10 Stat. 161).

[Cited in Wooster v. Handy, 23 Fed. 53, 54; Central Trust Co. v. Wabash, St. L. & P. Ry. Co., 32 Fed. 686.]

2. In ordinary cases, of no peculiar or special difficulty, and involving no extraordinary labor, a master of this court should, under the 82d rule in equity, prescribed by the supreme court, be allowed for his services on a reference, the compensation allowed by the state law to a referee, $3 per day, or at the rate fixed by the

[1] [Reported by Hon. Samuel Blatchford, District Judge, and Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 8 Blatchf. 107, and the statement is from 4 Fish. Pat. Cas. 318.]

rule of this court, of May 28th, 1859 (4 Blatchf. 515 [Append. Fed. Cas.]), for services rendered by commissioners under the 44th rule of the supreme court in admiralty, where, at that rate, the services would amount to more than $3 per day.

3. Cases of peculiar importance and difficulty ought to be made exceptions to such special rule.

4. In the present case, by reason of special circumstances, $10 per day was allowed to the master for hearings at which testimony was taken, argument heard, or other actual service rendered, and $5 per day for attending when the reference was adjourned without any service rendered.

[Applied in Untermeyer v. Freund, 50 Fed. 80.]

[This was a motion for a retaxation of costs. On a motion for a provisional injunction to restrain the defendants [the West, Bradley & Cary Manufacturing Company] from infringing letters patent for "improvement in skeleton skirts," granted to Samuel H. Doughty and James Draper, as assignees of James Draper, October 4, 1859, assigned to Doughty, Draper, James Brown, and William King, and reissued to them December 27, 1859, assigned to plaintiff and reissued to him August 1, 1865, an order was made directing that unless the defendants pay to the complainant the usual or regular license fee, established by the complainant for the use of such invention, to the extent that this defendant desired to use the same (the complainant tendering, at the time of such payment, a license to use such invention to that extent), a provisional injunction issued as prayed for in the bill of complaint, and by such order it was referred to a master to ascertain and report what, if any, was the regular license fee, so established by the complainant for such use, to the extent that the defendants should state before the master, they desired to use the same. Upon such reference, the parties appeared. Numerous sessions were held, at which proofs were taken, and several days were appointed for the taking of proofs and for hearing, at which the master attended, but at which nothing was done except to adjourn. On the coming in of the report, exceptions were filed, and an order was made referring the matter back for a further report. On such further reference, numerous sessions were had, and proofs were taken, and there were also times appointed for the purpose, at which the master attended, but the proceedings were adjourned. On the taxation of the costs of these references, the clerk has allowed to the complainant two docket fees, of twenty dollars each—one for each reference—and has taxed, as master's fees, twenty dollars per day for each day on which proofs were taken or argument heard, and the like twenty dollars for each day on which the proceedings were adjourned. The defendants objected to the taxation of the items above named, on the ground that no docket fee can be taxed for a hearing before a referee on such a

reference, and that the fees allowed to the master are excessive.] [2]

Stephen D. Law, for complainant.
Frederick H. Betts, for defendants.

WOODRUFF, Circuit Judge. (1.) The act of February 26, 1853 (10 Stat. 161), declares, that the fees or compensation prescribed therein shall be taxed and allowed to attorneys, solicitors and proctors in the district and circuit courts, United States district attorneys, clerks, marshals, witnesses, jurors, commissioners and printers, and that no other compensation shall be taxed and allowed. The act then allows to attorneys, solicitors and proctors, among other fees, as follows: "In a trial, before a jury, in civil or criminal causes, or before referees, or on a final hearing in equity or admiralty, a docket fee of twenty dollars." No other provision of the act can be claimed to warrant the charge of docket fees in the bill of costs taxed herein. It will be noticed, that, in the language quoted, there is no mention of any hearing before a master of this court in equity, for any purpose, and, I think, for the reason, that there is no practice, in equity, sending a case to a master for a final hearing. And if, within the fair intent of the statute, a matter referred to a master might be said to be heard before him as a "referee," using that term in its broadest sense, and not as meaning a person technically so called, in distinction from a recognized officer of the court, still, the hearing before him on such a reference is neither a trial, nor a final hearing, within the meaning of the act. "Trial" and "final hearing" have well-known definite meanings in the law, and they are used in this statute in that well-known sense. "Trial" is used to describe the process of determining the issues in an action at law; and "final hearing," the submission of the case, for a determination thereof, upon the pleadings, or pleadings and proofs, or otherwise, so that the case may be finally disposed of. No such trial or final hearing was had before the master, in this case, whether he be regarded as master, or, in a general sense, as a referee. The proofs taken before him, and the report he was required to make, were for a provisional and interlocutory purpose, namely, to dispose of a motion for an injunction, pendente lite. This was neither a trial nor a final hearing. The two sums taxed as docket fees should, therefore, have been disallowed, and must be struck out.

(2.) It is a little remarkable, that while the statute often speaks of causes in equity, and prescribes the fees of solicitors, marshals and clerks, for services in suits in equity, the statute nowhere mentions fees of masters. But, in prescribing the fees of commissioners, it does allow (page 167) "for attending to a reference, in a litigated matter, in a civil cause at law, in equity or in admiralty, in pursuance

[2] [From 4 Fish. Pat. Cas. 318.]

of an order of court, three dollars per day." The supreme court, by rule 88 of the rules in equity, have assumed to authorize the circuit courts, or perhaps to declare the general power of the circuit courts, in equity, to appoint standing masters in chancery in their respective districts; and have provided, that "the compensation to be allowed to every master in chancery, for his services in any particular case, shall be fixed by the circuit court in its discretion, having regard to all the circumstances thereof." The clerk has no power, under this rule, to fix the compensation to be allowed; and his taxation was, therefore, inoperative. This appeal may, however, be regarded as an application to the court to fix the compensation to be taxed, and it was substantially so treated by the counsel who appeared and argued the question. It is not obvious that, in like cases, the fees allowed to a master for attending to a reference, in a litigated matter, should be greater than the fees to which a commissioner attending to such a reference is entitled by statute. The question, however, under the rule of the supreme court, is what, in the discretion of the court, ought to be allowed to the master, in this case. Obviously, this question can be best answered, by ascertaining, if possible, what is a proper compensation to be in general allowed—what, in ordinary cases, of no peculiar or special difficulty, and involving no extraordinary labor. The importance of some general rule for the government of ordinary cases, at least, is not only apparent, but it has been the ground of specific legislation as to nearly all the fees which are permitted to be taxed; and, although the rule of the supreme court has left these particular fees in the discretion of the court, it is, nevertheless, important, even here, that some general rule should govern the subject. The rule of this court in relation to references in admiralty, under the forty-fourth rule of the supreme court in admiralty, was adopted to fix the fees to be allowed to commissioners under that rule, and the consideration that some general rule or rate of fees was important, may be assumed to have largely influenced the court in the matter, lest abuses should arise out of an unsettled and indefinite appeal to discretion. Indeed, it would not be doing great violence to the action of this court last referred to, if I were to say, that, although this court could not, by rule, deprive a party of his right to appeal to the discretion of the court secured to him by the rule of the supreme court, still, this court can determine what is a proper compensation in ordinary cases, and did so, on the 28th of May, 1859, when the rule of this court was adopted. 4 Blatchf. 515 [Append. Fed. Cas.]. It, therefore, appears, that, by statute, the fees of commissioners, on a litigated reference, in a civil cause, are three dollars a day; and that their fees on a reference in admiralty, under the 44th of the rules of the supreme court, were fixed, in 1859, by rule of the circuit court, at the rates allowed by the court of chancery, and established in 1844, upon the general principle, that the services rendered by officers of this court should be compensated at the rates allowed for similar services in the courts of the state. In general, this will be found just and reasonable, though, since 1859, the changes in the relative value of money and the means of subsistence have been so great, that the specific rates then deemed reasonable may now be inadequate, in some cases. There are now no masters in chancery, under the state laws. The services formerly performed by them are now rendered by referees appointed for each case; and I think it quite reasonable that masters of this court should be allowed, as the general rule, the compensation allowed by the state law to such referees, three dollars per day, or at the rate fixed for services under the above named 44th rule, where, at that rate, the services would amount to more than three dollars per day. But cases of peculiar importance and difficulty sometimes come before a master or a referee, in which that compensation would be inadequate. The state law recognizes this, by providing that the parties may agree to allow the referee a greater compensation, in which case the rate agreed to may be taxed. Without affirming or adopting this latter practice as controlling the court in the exercise of the discretion given by rule 88 in equity, above referred to, I am of opinion that such special cases ought to be made exceptions to the general rule on the subject.

In the present case, the counsel for both parties agree, and it is shown by affidavit, that peculiar and unusual labor and difficulty was thrown upon the master, and that even the adjournments involved a great loss of time, which might have been and would have been devoted to other business actually pending before him. I, therefore—while, as the general rule, I approve the rates prescribed for referees under the state law, and do not design to make this special case a precedent for others—deem it just and reasonable to fix the compensation to be allowed to the master, for hearings at which testimony was taken, argument heard, or other actual service in the case rendered, at ten dollars per day, and for attending when the reference was adjourned without any service rendered, at five dollars per day. An order to this effect may be entered, and the costs will be adjusted according to the foregoing opinion, upon both the points submitted.

[NOTE. For another case involving this patent. see note to Doughty v. West, Case No. 4,029.]

DOUGLAS (CASE v.). See Case No. 2,491.

DOUGLAS (McALLISTER v.). See Case No. 8,657.

DOUGLAS (MAGIC RUFFLE CO. v.). See Case No. 8,948.

DOUGLAS (UNITED STATES v.). See Case No. 14,988.