CLARK v. CENTRAL RAILROAD & BANKING CO. OF GEORGIA. CENTRAL RAILROAD & BANKING CO. OF GEORGIA v. FARMERS' LOAN & TRUST CO. OF NEW YORK. FARMERS' LOAN & TRUST CO OF NEW YORK v. CENTRAL RAILROAD & BANKING CO. OF GEORGIA.

(Circuit Court of Appeals, Fifth Circuit.   February 25, 1895.)

No. 319.

1. RAILROAD RECEIVERSHIPS—PAYMENT FOR SUPPLIES.
The C. Ry. Co., in June, 1891, was leased to the R. Ry. Co., which went into possession, and operated the C. Ry. Co. lines until March, 1892, when a receiver of the C. Ry. Co. was appointed, and took possession of its property. After the lease, and before the receivership, a contract was made for a supply of coal to the C. Ry. Co., under which coal was delivered both within six months before and after the receivership, some of which was used before the receivership, some was on hand when the receiver was appointed, and was taken and used by him, and some was delivered to and used by him. *Held* that, without regard to who made the contract, the coal having been furnished for and used in the operation of the C. Ry. Co.'s lines, for the purpose of carrying on its business, the receivers should be directed to pay not only for that which had been delivered to them, but for that which had previously been delivered to the road and used, either before or after the receivership.

2. SAME—PAYMENT FROM CORPUS OF ESTATE.
It appeared that before the receivership there had been a diversion of income for the payment of interest on bonds, and that the receiver expended for betterments, out of the income, a sum larger than the claim of the sellers of the coal. *Held,* that payment for the coal should be made out of the corpus of the property, if the income was insufficient.

Appeal from the Circuit Court of the United States for the Eastern Division of the Southern District of Georgia.

This was a bill by Rowena M. Clark against the Central Railroad & Banking Company of Georgia, and dependent bills by the Central Railroad & Banking Company against the Farmers' Loan & Trust Company, and by the Farmers' Loan & Trust Company against the Central Railroad & Banking Company, all of which were consolidated, and a receivership of the property of the Central Railroad & Banking Company, in the first suit, extended to the three. The Virginia & Alabama Coal Company and the Sloss Iron & Steel Company intervened, seeking payment by the receiver for certain coal supplied to the railroad. The circuit court made a decree allowing the claim in part. The interveners appeal.

This is a suit brought by intervention for coal furnished by the interveners, the Virginia & Alabama Coal Company and the Sloss Iron & Steel Company, for the operation of the Central Railroad & Banking Company of Georgia while being operated by the Richmond & Danville Railroad Company. All the coal charged for as furnished before the appointment of receivers for the Central Railroad Company was furnished within less than six months prior to such appointment. The Central Railroad was leased to the Georgia Pacific Railroad Company; the Georgia Pacific was leased to the Richmond & Danville Railroad Company; and the latter company, under color of this lease, was operating the Central Railroad lines. On June 1, 1891, the Central was leased to the Georgia Pacific Railroad Company; and on the same day the Richmond & Danville (to which the Georgia Pacific was already leased) went into the possession of the Central, and operated the same till March 4, 1892, at which date the receivers of the Central were appointed. The lease transferred not only the main lines of the Central, but various lines which it controlled by lease and by stock ownership. It further provided that the lessees should take possession of the leased property as a running road, taking such cash and credits as were then due, and, on the other hand, obligating the lessees to pay the current debts of the lessor company for supplies, etc. The lease also provided that the lessee should pay the interest on the bonds and debentures of the Central and of the lines upon which the Central had guarantied interest on bonds, and also dividends on the stock of the Central. It appears from the agreed statement of facts that the semiannual interest on the $5,000,000 of mortgage bonds of the Central was paid in January, 1892 (the order appointing the receiver being dated March 4, 1892). It is also an agreed fact that during the receivership the Central expended for betterments on its railroad lines, from the income of the roads during the receivership, a sum much larger than the entire claim of the interveners. To set aside the lease, Mrs. Rowena M. Clark, a stockholder, brought her bill against the Central Railroad, under which a receiver was appointed March 4, 1892. The Richmond & Danville and Georgia Pacific Companies disclaimed any rights under the lease, and no issue was raised in relation thereto such as to require decision as to the validity or invalidity of the lease, and such question has not been determined. Shortly afterwards the Central Railroad filed a dependent bill, under which the same receivership was continued, and under which it was also extended to the Port Royal & Augusta Railroad and the Port Royal & Western Carolina Railroad. The Farmers' Loan & Trust Company, the trustee for the mortgage bondholders of the Central Railroad, afterwards filed its dependent bill in said cases, under which the same receivership was continued. All these cases were afterwards consolidated. On July 13, 1891, a contract was made with the Virginia Company for the purchase of a year's supply of coal to operate the Central lines. The contract stipulated for 90 cents per ton of 2,000 pounds, to be delivered on cars at the mines, and to be shipped at times and in quantities to suit. In pursuance of this contract the Virginia Company between September 16, 1891, and March 4, 1892, shipped to the division superintendents (Curran at Macon, Dill at Savannah, and Epperson at Augusta) coal to the amount (per contract

price of 90 cents per ton) of $26,607.44. The Sloss Company, under the same contract, by the consent of both parties, supplied coal to the amount of $14,-359.38, but at an agreed price of 95 cents a ton. All bills were made out in the name of the Central Company. The price at which the Central Railroad got the coal was 7 or 8 cents per ton less than the market price at that time. It appears that, while much of the coal was used in the operation of the Central Railroad prior to the receivership, a large part of the coal delivered was in its bins at the time of the appointment of the receivers on March 4, 1892, and went into their possession and was used by them, and that some of the coal was received after that time, and likewise went into the possession of the receivers. An agreement of counsel is found in the record as follows: "It is agreed that the coal described in the exhibit to the intervention by amounts and dates of shipment was delivered by the intervener to the railroad lines of the Central Railroad and Banking Company of Georgia, which was being operated by the Richmond and Danville Railroad Company till the 4th of March last, at the dates and in the amounts shown by said exhibits." It, however, appears that some of the coal delivered to the Central Railroad was used by several other railroads known as the Port Royal & Augusta, the Port Royal & Eastern Carolina, and the Charlotte, Columbia & Augusta Railroads. The master's report finds that coal of the Virginia Company, worth $13,735.89, was used prior to the receivership; that coal worth $6,700.50 was in the bins at the time of the appointment of the receiver, and that coal worth $6,171.30 was received by the receiver after his appointment, and that, of the coal of the Sloss Company, coal worth $10,320.17 was used prior to the appointment of the receiver; that coal worth $3,818 was in the bins March 4, 1892, and that coal worth $776 arrived after the appointment of the receivers. The circuit court held the Central Railroad and the receivers liable only to the extent of the coal which was delivered after March 4, 1892 (holding them liable at the contract price), and rendered a decree accordingly. From that decree the interveners appeal.

Walter B. Hill, for appellants.
Marion Erwin, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and TOULMIN, District Judge.

TOULMIN, District Judge, after stating the case as above, delivered the opinion of the court.

From what appears in the record we are satisfied that the debts claimed by the interveners for coal delivered prior to the appointment of the receivers were current debts for operating expenses of the Central Railroad lines, made in the ordinary course of business, to be paid out of the current earnings. The coal was purchased in the name of the Central Railroad. It was delivered on its lines, and was furnished for their operation, and, with the exception of a small amount, was used by them. There was evidence that the contract for the purchase of the coal was made by the Central Railroad, and the master so found. The circuit court, however, differed with and overruled the master in such finding.

In our view of the case, it makes no difference whether the contract for the purchase of the coal was made by the Central Railroad or by the Richmond & Danville Railroad. The coal was delivered on the lines of the Central Railroad, and was furnished for and used in their operation. The Richmond & Danville Railroad Company had the possession of the Central Railroad lines, was operating them, collecting their revenues, and was under the obligation to pay out of their earnings the current expenses and the interest on

their bonds. But whether that possession was lawful or otherwise, or whatever the relations between the two railroads may have been, we think that the Central Railroad was liable for the necessary supplies furnished and used for the purpose of keeping its road in successful operation, and carrying on its business as a common carrier. Such debts are preferential, and the persons to whom they are due are entitled to have the income of the receivership used in payment of them as the railroad company would have been bound in equity and good conscience to use it if no change in the possession of the property had been made. Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., 53 Fed. 182; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675; Fosdick v. Schall, 99 U. S. 235. In this case the equities are especially favorable to the interveners, for it appears that there was a diversion of the income for the payment of interest on bonds of the Central Railroad in January, 1892, some two months before the receivers were appointed; and it also appears that the receiver expended from the income for improvements on the railroad property a sum much larger than the claims of the interveners. Our opinion is that the receivers are liable not only for the coal which they received after their appointment from unloaded cars, but that they are equally liable for the coal which was in the bins at the date of their appointment, and which they took possession of and used in the operation of the Central Railroad lines, and that, as representatives of the Central Railroad & Banking Company of Georgia, they are also liable for the coal delivered to and used by the Central Railroad lines prior to their appointment, and which was then unpaid for. For that portion of the coal used at Augusta by the three railroads there, as shown by the evidence, the Central Railroad and the receivers are liable, except as to that used by the Charlotte, Columbia & Augusta Railroad. It appears that the other roads mentioned were under the control of the Central Railroad, and were a part of its system. The Charlotte, Columbia & Augusta Railroad was not. It does not appear that the court in appointing the receivers made any provision for the payment of the interveners' claims, but, as there is evidence in the record showing that current earnings, before the receivers were appointed, were diverted to paying interest on the bonded debt, and that after their appointment they made large permanent improvements on the railroad property, the interveners should be allowed payment of their claims from the corpus of the property, should the earnings in the hands of the receivers be insufficient to pay them. The interveners are only allowed the price stipulated for, and which they expected to receive when the coal was delivered, and which is in fact the price claimed in their petition of intervention. In our opinion, the view which the circuit court took of this case was an erroneous one, and the decree must be reversed, and the case is remanded to the circuit court with instructions to enter a decree in favor of the interveners for the amounts respectively due them for coal delivered to the lines under the control, and forming a part of the system, of the Central Railroad & Banking Company of Georgia, as shown by the evidence in this case, including the coal furnished

before the appointment of the receivers, and that found in the bins at the time of such appointment, and of which the receivers took possession, as well as the coal delivered to the receivers after their appointment, the amount due being determined by the contract price, and an order that they recover from the Central Railroad & Banking Company of Georgia and the receivers of the same such sums thus found to be due. No decree will be entered in favor of the interveners for the payment of that portion of the coal which was used by the Charlotte, Columbia & Augusta Railroad Company. Reversed and remanded.