## NORTHERN PAC. R. CO. v. LAMONT, Intervener.

### FARMERS' LOAN & TRUST CO. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. June 4, 1895.)

### Nos. 594 and 595.

1. RAILROAD FORECLOSURE—PREFERENTIAL DEBTS.

Receivers of the N. Ry. Co. were appointed, and ordered to pay current expenses, sums due connecting roads, and sums due for wages within seven, and supplies and materials within six, months. One L. recovered a judgment upon a contract for furnishing a waiting room and ticket office at an important station, heating and lighting the same, and furnishing board and lodging at reduced rates to employés of the company; the indebtedness having accrued more than six months before the receivership. *Held*, that such judgment was a preferential debt, and should be ordered paid, without regard to the time when the debt accrued.

2. SAME—ASSIGNMENT.

*Held*, further, that the right of preference attached to the debt itself and consequently passed to an assignee of the debt.

Appeal from the Circuit Court of the United States for the District of North Dakota.

This was an intervening petition filed by Joseph Lamont in the consolidated cause of the Farmers' Loan & Trust Company, P. B. Winston, and others against the Northern Pacific Railroad Company, praying for the payment by the receivers of a judgment held by him as a preferential debt. The circuit court granted the petition. The Farmers' Loan & Trust Company and the railroad company appealed.

Receivers were appointed for the Northern Pacific Railroad Company by the United States circuit court for the district of North Dakota on the 15th day of August, 1893, and again on the 18th day of October, 1893, on bills which are particularly set out in the statement in case No. 575 (Scott v. Farmers' Loan & Trust Co., 69 Fed. 17), in which an opinion is herewith filed. The orders appointing the receivers provided they should pay: "(1) All current expenses incident to the creation or administration of this trust and to the operating of said railroads and properties. (2) All sums due or to become due connecting or intersecting lines or railroads arising from the interchange of business, and for track service of other railroads used by said Northern Pacific Railroad Company in the operation of its lines, traffic and car-mileage balances, and all amounts now due from said Northern Pacific Railroad Company for taxes and assessments upon the property, or any part thereof. (3) The amounts due to all operatives and employés of said company for any services rendered to said company since the 15th day of January, A. D. 1893. (4) All amounts due for supplies and material purchased and used in operating said railroads or due by said company for supplies furnished to laborers and credited against their labor since the 15th day of February, A. D. 1893." On the 1st day of September, 1881, Edward H. Bly and the Northern Pacific Railroad Company entered into a contract whereby the railroad company leased certain property to Bly, who agreed that he would, "at his own cost and expense, maintain, during the continuance of this lease, upon the said premises, a commodious and first-class hotel, complete in all its furniture and appointments, * * *" and that he would "suitably fit up, maintain, warm, and light, free of expense to the party of the first part, such waiting rooms as may be required in said building for the accommodation of passengers by the said railroad at Fargo, and also office room for the agents of the party of the first part for selling tickets. And the party of the second part further agrees that during the continuance of this lease the regular agents and employés of the party of the first part, boarding or rooming at such hotel, shall be charged not more than two-thirds of the regular transient rates for the time being. * * *" To compensate Bly for per-

forming these covenants of the contract on his part, the company agreed to transport his help and supplies for carrying on and keeping up the hotel and waiting rooms and offices for the company at one-half of the regular tariff rates for similar transportation at the time. The intervener succeeded to the rights of Bly under this contract, and performed all the covenants of the contract obligatory on Bly. The practice under the contract was for Bly or his successors in interest to pay the railroad company the full tariff rates at the time the service was rendered, and, when an accounting was had under the contract, the company accounted for and refunded the one-half of the charges, which were to go towards paying Bly or his assignees for furnishing the company the accommodations mentioned in the contract. The company did not pay the amount due under the contract to the intervener, Lamont, as assignee of Bly, for the period from January 1, 1889, to February 27, 1893, and the intervener brought suit therefor in the district court for the Third judicial district of North Dakota, and on the 15th day of November, 1893, recovered judgment against the company for the sum of $2,035. On the 28th day of November, 1893, the intervener, by leave of court, filed his intervening petition in the suit in which the receivers were appointed, setting up a recovery of the judgment for $2,035, and the facts out of which the indebtedness arose, and prayed that it might be allowed as a preferential debt, and the receivers directed to pay the same. There was a reference to a master, testimony was taken, and upon final hearing the court below decided the judgment was a preferential claim, and directed the receivers to pay it accordingly. From this decree the Northern Pacific Railroad Company and Farmers' Loan & Trust Company appealed to this court.

C. W. Bunn (H. C. Truesdale and Turner, McClure & Rolston, on the brief), for appellants.

Charles E. Joslin, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The money for which the intervener recovered judgment was in fact due to him for providing, furnishing, and maintaining for the railroad company at Fargo waiting rooms for its passengers, office room for its ticket agents, and a convenient place for its employés to board and lodge at reduced rates. To defeat the preferential character of this claim, the court would have to be satisfied that waiting rooms for passengers and an office for the ticket agents are not essential or necessary, at a town of several thousand population, on the Northern Pacific Railroad. We are asked, in effect, to hold that passengers on that road, while waiting to take passage on its trains, must endure the rigors of a North Dakota climate without shelter, and that its ticket agent must be content with an office on the public commons, and carry his tickets in his pocket or his hat. The road is in straits financially, but we are unwilling to believe that its business is so unremunerative, and its patronage so slender as to justify it in dispensing with waiting rooms and a ticket office at one of the most important towns on its line west of the Mississippi river. Decided by the strictest rules applicable to this class of cases, the intervener's claim was clearly a preferential debt. A preferential debt is not barred though contracted more than six months before the appointment of a receiver. As to such debts, there is no arbitrary "six-months rule," as has been often decided. Hale v. Frost, 99 U. S. 389; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675; Central

Trust Co. v. St. Louis, A. & T. Ry. Co., 41 Fed. 551; Central Trust Co. v. Wabash, St. L. & P. Ry. Co., 30 Fed. 332; Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., 53 Fed. 182, and note; Clark v. Railroad Co.,[1] 66 Fed. 803. In the case of Trust Co. v. Morrison, 125 U. S. 591, 8 Sup. Ct. 1004, a liability incurred by the intervener as surety for a railroad company on an injunction bond to stay execution on a judgment at law against the company, executed more than six years before the date of filing the petition of intervention, was held to be a preferential claim. In this case a portion of the intervener's claim accrued within six months preceding the appointment of the receivers, but the six-months limitation in the order appointing the receivers has no effect in barring meritorious preferential claims. This is conceded in the brief of the learned counsel for the appellants, where it is said:

"We do not mean to be understood as claiming or urging that claims might not and have not arisen already in the progress of this litigation which in equity and good conscience should be paid out of the earnings in the hands of the receivers, and which, if not already within the scope of the order, should be the subject of a special order to that effect; but clearly there must be a limit somewhere, beyond which courts of equity should not go in allowing such preferences. * * *"

The right of preference is one that attaches to the debt, and not to the person of the original creditor; consequently the right passes to an assignee of the debt. Union Trust Co. v. Walker, 107 U. S. 597, 2 Sup. Ct. 299.

The decree of the circuit court is affirmed, with interest and costs.