FORD v. CENTRAL TRUST CO.

(Circuit Court of Appeals, Eighth Circuit. October 14, 1895.)

No. 617.

CORPORATIONS—RECEIVERS—PRIORITIES OF CLAIMS.

The N. Water Co., a corporation formed to supply water to a city,— its property being mortgaged to secure an issue of bonds,—made two promissory notes to one F., its superintendent, to secure a debt to him for work and materials in making an addition to its plant, and for salary. Before the maturity of the notes, F. transferred them to one of his creditors, as collateral security. After the debt represented by the notes accrued, the water company authorized F. to collect water rents, and apply them on his salary and other work; and F. collected such rents, but applied them to salary and claims arising after those represented by the notes. The bondholders authorized the delivery to the company of certain bonds to pay for the addition to its plant upon which F. had worked; and such bonds were sold, and the proceeds, in part, applied to the payment for such addition, but F.'s claim was not paid. A suit to foreclose the mortgage having been begun, and a receiver appointed, F. applied to have the debt represented by the notes paid out of the proceeds of the property. *Held* that, as the notes were held by F.'s creditor, he had no right to collect the debt represented by them; but, even if he held the notes, he would, under the circumstances, have no equity to enforce payment out of the property of the water company.

Appeal from the Circuit Court of the United States for the District of Kansas.

This was a suit by the Central Trust Company against the Newton Water Company for the foreclosure of a mortgage. John E. Ford filed an intervening petition, praying for payment of a claim against the water company out of the property in the receiver's hands. The circuit court dismissed the petition. The intervener appealed. Affirmed.

On the 15th day of January, 1887, the Newton Water Company, a corporation of Kansas formed for the purpose of supplying the city of Newton, in that state, with water, executed a mortgage to the Central Trust Company of New York, on its plant and all additions thereto which might thereafter be made, to secure the payment of its first mortgage bonds. Default was made in the payment of the mortgage debt, and in a suit brought to foreclose the mortgage a receiver was appointed on the 31st day of July, 1891. In 1888 the water company undertook to improve its plant by putting in a number of "Wagner Steam Wells." The intervener, Ford, was the superintendent of the water company from 1885 to 1891, at a salary of $600 per year. He was also a plumber, and had the privilege of tapping the mains and doing plumbing. He agreed with the water company to make the connections between the Wagner Steam Wells and the mains and pipes of the company, and to furnish the labor and materials therefor. This work was completed on the 14th day of April, 1889. The water company failed to pay for this work and materials, which amounted to $3,424, and on the 1st day of October, 1890, executed and delivered to Ford its two negotiable promissory notes, due in 60 and 90 days, respectively,—one for the sum of

$2,326.45, and the other for the sum of $2,000. The sum of these two notes included the amount due Ford for making the water connections, and, in addition thereto, $600 for his salary as superintendent for the year 1890, and 10 per cent. interest on the whole from the 1st day of January, 1890. Before the maturity of these notes, Ford indorsed and transferred them to one of his creditors, as collateral security. In his testimony he says: "I turned the notes over for security for a debt that I owed the United States Wind-Engine & Pump Company of Batavia, Illinois, at Kansas City, Missouri. I presume they have them yet." The total cost of the Wagner Steam Wells and connections was $5,151.20. To enable the water company to pay for these wells and connections, the bondholders consented that the trustee in the mortgage might deliver to the water company $10,000 of the company's first mortgage bonds; and the bonds were delivered accordingly, and sold for $9,000 or $9,500, but only $2,500 of the sum realized therefor was applied on the debt incurred for the wells and connections. The wells and connections proved to be of little utility, and added little or nothing to the value of the plant. Early in 1890 the water company authorized Ford to collect all past-due water rents and all rents to accrue, and to apply the same to pay his "salary and for other work." In pursuance of this authority Ford collected water rents amounting to more than the sum due for making the connections with the Wagner Steam Wells; but these collections were not applied to pay the debt created for making such connections, but were applied to pay Ford's salary as superintendent, and for work done by him during the years 1890 and 1891. On the 22d day of February, 1892, Ford filed his petition of intervention in the foreclosure case: praying that the receiver therein might be directed to pay him the amount of the claim for making the connections with the Wagner Steam Wells, and that, if the receiver had not sufficient funds to pay the claim, it be paid out of the proceeds of the sale of the property. The court below dismissed the petition, and the intervener, Ford, brought the case here on appeal.

Joseph W. Ady, Samuel R. Peters, and John C. Nicholson, for appellant.

A. B. Jetmore and A. P. Jetmore, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

In support of the relief he asks, the appellant cites and relies on Fosdick v. Schall, 99 U. S. 235; Burnham v. Bowen, 111 U. S. 781, 4 Sup. Ct. 675; Trust Co. v. Souther, 107 U. S. 591, 2 Sup. Ct. 295; Barton v. Barbour, 104 U. S. 126, and other railroad cases. We recently had occasion to show that the doctrine of these cases had never been applied to any case except that of a railroad. Hanna v. Trust Co., 70 Fed. 2. Assuming, but not deciding, that the doctrine of these cases is applicable to a corporation under obligation to furnish a city and its inhabitants with water, still the appellant cannot maintain his claim, for the following reasons:

1. The claim which the intervener seeks to have made a charge upon the property of the water company, paramount to that of the mortgage, accrued nearly three years before the petition of intervention was filed; and shortly after it accrued the water company executed to the intervener its negotiable notes therefor, which the intervener indorsed and transferred, before their maturity, to one of his creditors, as collateral security for a debt which he owed the creditor, which debt he has never paid: and the creditor still holds the notes as collateral security. The creditor who holds these notes

as collateral security is a bona fide holder thereof, for value. Railroad Co. v. National Bank, 102 U. S. 25. And if the claim for which they were given constituted an equitable lien on the mortgaged property superior to the mortgage, or if the holder thereof had any equitable preference right to have the same paid out of the earnings of the property, or the proceeds of the sale thereof, all such rights passed to the indorsee of the notes; and while these notes remain unpaid, and are held by the indorsee as collateral security, the indorser cannot maintain a suit to collect the debt evidenced by them. The intervener is seeking to recover on the open account for services and materials for which the notes were given; averring in his petition "that said notes were made for the purpose of evidencing said indebtedness, and none other." But the debt, and all equitable rights attached thereto, passed to the indorsee of the notes. Trust Co. v. Walker, 107 U. S. 597, 2 Sup. Ct. 299; Trust Co. v. Lamont, 69 Fed. 23.

2. For nearly three years after the debt for which the notes were given accrued, the intervener continued to act as superintendent of the water company, and during that time collected, by authority of the company, water rents to an amount exceeding the claim for making the water connections, which he applied in payment of his salary, and for work done long after the water connections were made. Without regard to any technical rule for the application of payments, it would be inequitable for the intervener to collect in full all sums due to himself from the water company for salary and work for two or three years, and then throw upon the mortgagee the burden of paying a debt which accrued to him at a much earlier date.

3. The mortgage bondholders contributed $10,000 in bonds, which were sold for $9,000 or $9,500 in cash, for the express purpose of paying the claim set up by the intervener, and other debts incurred in putting in the Wagner Steam Wells. The amount turned over to the company by the bondholders to pay these claims largely exceeded the amount of the claims. The intervener was superintendent of the water company, and knew that the bondholders had provided the water company with the means to pay these claims, and took no steps to compel the officers of the company to pay them, but permitted the company to use the funds for other purposes, in violation of its trust. Under these circumstances, the intervener, if he still owned the claim, would have no equity to ask, in effect, that the bondholders be required to furnish the money to pay it a second time. The decree of the circuit court is affirmed.