SAVANNAH, F. & W. RY. CO. v. JACKSONVILLE, T. & K. W. RY. CO.
et al.

(Circuit Court of Appeals, Fifth Circuit. February 23, 1897.)

No. 533.

RAILROAD RECEIVERSHIPS—PREFERRED CLAIMS—RENTALS OF TERMINAL FACILITIES.

A receiver of a railroad having been appointed in a foreclosure suit, with instructions to pay, out of moneys and income in his hands, for supplies and operating expenses, and for expenses of operation during the six months previous to the receivership, another railroad company presented an intervening petition in the suit, setting up a contract with the insolvent railroad company to furnish it with terminal facilities at a stipulated rental, alleging that such facilities had been used up to the appointment of the receiver, and by him after his appointment, and claiming a preference, for the rental due, over the mortgage debt. *Held*, that as the intervener, whether entitled to its whole claim or not, was at least entitled to a fair rental for the time during which its terminal facilities were used by the receiver, it was error to sustain a demurrer to the whole petition.

Appeal from the Circuit Court of the United States for the Southern District of Florida.

On July 23, 1892, the Pennsylvania Company for Insurances on Lives and Granting Annuities filed its bill against the Jacksonville, Tampa & Key West Railway Company for the foreclosure of a mortgage executed to it, as trustee, May 15, 1890, by said railway company. This mortgage is subsequent in point of time to three others executed by the constituents of the Jacksonville, Tampa & Key West Railway Company to the Mercantile Trust Company, to secure bonds aggregating $2,216,000. Agreeably to the prayer of the bill, a receiver was appointed, who went into possession of, and is now operating, the railway. By the order of appointment, the receiver was authorized, out of the moneys and income coming into his hands, to pay all state and municipal taxes chargeable against the property; to pay for such repairs, supplies, labor, and services as should, in his judgment, be necessary or proper to conserve and operate the railway and other property; and to pay the indebtedness of said railway company incurred for expenses of operation during the six months next preceding the date of the order. He was further authorized to pay the maturing interest coupons attached to the bonds issued by the three constituent companies to the Mercantile Trust Company. Subsequently, the appellant, the Savannah, Florida & Western Railway Company, filed its petition of intervention in the original suit, in which it claimed an indebtedness of $45,352.32 against the Jacksonville, Tampa & Key West Railway Company, and, to secure the payment of the same, prayed that an equitable lien be declared in its favor superior to that of the bondholders. The debt of appellant is alleged to have arisen out of a contract entered into between it and the Jacksonville, Tampa & Key West Railway Company, August 1, 1888, by the terms of which appellant agreed to furnish to the Jacksonville, Tampa & Key West Railway Company certain terminal facilities at the city of Jacksonville, as follows: "The necessary track room at its terminal station grounds, in the city of Jacksonville, Florida, for the arrival, departure, standing, and making up of its trains, both passenger and freight, and the necessary facilities for the proper accommodation of its traffic at the said city of Jacksonville, for the period of ninety-nine (99) years, with the privilege of renewal on like terms and conditions." In the contract, the term "first party" refers to the appellant, and "second party" to the appellee, the Jacksonville, Tampa & Key West Railway Company. The third, fourth, and fifth clauses of the contract provide for the payment of the terminal facilities, as follows: "Third. The second party covenants and agrees to pay to the first party, for the use of such of the premises aforesaid as may be exclusively set apart and accepted for its purposes, an annual rental as follows: Six per cent. on the actual cost thereof, and the actual annual expenditure for maintenance and operating expenses, including taxes and insurance. Fourth. The second party covenants and agrees to pay to the first party, as annual rental for the use of such of the premises aforesaid as may be used by it in common with the first party, such part of the interest at six per cent. on the actual cost thereof, and of

the actual cost of maintenance and operating expenses, including taxes and insurance, as may be proportionate to its use thereof, which proportion shall be ascertained and determined on the basis of the total number of passengers and tons of freight added together that are carried by each to and from Jacksonville during each year. Fifth. From the date of this agreement, and until the end of the present calendar year, the second party shall pay monthly, on account of the rental of all the premises aforesaid, three hundred and twenty-five ($325) dollars, and at the end of the calendar year, or at some reasonable time thereafter, the relative traffic for the year of each party shall be ascertained and stated by each party to the other for the purpose of arriving at the actual rental due by the second party for the said year; and the amount so established as the total actual rental due for the said year shall be the amount to be paid on account in equal monthly installments during the next calendar year, subject to further payments or deductions when the relative traffic of each party for that year shall have been ascertained and determined; and for each calendar year thereafter the same method of payments on account, subject to revision at the end of each year, shall be followed during the existence of this agreement, but, pending the said annual statement of passengers and tonnage, the second party shall pay monthly on account the same in amount as it has been paying during the previous year." In reference to the performance of the contract by the appellant, the petition alleges: "That, in pursuance of said contract, petitioner did furnish terminal facilities, including depots, warehouses, and wharves, necessary for the purpose of the transaction of its business by the Jacksonville, Tampa and Key West Railway Company, together with room at its station grounds for the arrival, departure, standing, and making up of its trains, and all necessary facilities for the accommodation of its traffic, including the use of switch engines, flagmen, watchmen, crew, and employés necessary for the making up of its trains and doing its switching, police for the protection of its property; and did also furnish a ticket office and ticket agent, and the money to pay for same; and, in addition thereto, did furnish and pay for the maintenance of a ticket office jointly with the petitioner at the St. James Hotel; and did pay the salary of a soliciting agent for both, and the salaries for maintaining a joint ticket office in the city of Jacksonville for the account of petitioner and the Jacksonville, Tampa and Key West Railway Company; and did pay moneys out for the Jacksonville, Tampa and Key West Railway Company for its proportion of cost of telephone at the ticket office in Jacksonville; and did pay for its proportion of electric lights, ice, and for the postage stamps necessary in the operation of said road; and also did pay out sums of money for labor and repairs to said cars of the said Jacksonville, Tampa and Key West Railway Company, and for lubricants; and did, from time to time, furnish labor and material for the said Jacksonville, Tampa and Key West Railway Company; and did pay for the rent of the different ticket offices for account of the Jacksonville, Tampa and Key West Railway Company; and did pay for repairs of piers and wharves for account of said Jacksonville, Tampa and Key West Railway Company, and for all water rents due for water used, and for all other material and labor and offices and repairs necessary and required for the operation of the said Jacksonville, Tampa and Key West Railway Company, and for proper facilities and terminals for said railway company. That for a more particular account of the several items of expenditure and repairs, and amounts before enumerated due to the petitioner, petitioner files herewith an itemized account, marked 'Exhibit B,' and makes said account a part and parcel of its petition; and, for particularity as to the amounts due petitioner, reference is made to said itemized account. Petitioner further states that, as far as the dates when said several amounts became due is concerned, petitioner refers to said itemized statement, marked 'Exhibit B,' hereto attached." Exhibit B consists of a lengthy and complicated itemized statement of account, extremely difficult to properly understand.

To the petition of intervention, demurrers were interposed by both the complainant and defendant in the original suit, and by the receiver. All the parties assign substantially the same grounds of demurrer, which may be stated in the language employed by the original complainant: "First. That it appears by the petitioner's own showing that the alleged debt is an unsecured claim against the defendant railway company, and that petitioner's right to payment is subordinate and inferior to that of the bondholders represented by complainant. And, second, that it appears from petitioner's own showing that the greater part of its alleged indebtedness is a claim which arose against the defendant railway company more than six months prior to the appointment of the receiver in this case, and that the petitioner has no

greater equity to receive payment thereof than any other unsecured creditor in like situation would have; and wherefore, and for divers other errors and imperfections, this complainant demands of this court whether it shall be compelled to make any other or further answer to the said petition or any of the matters and things therein contained." At the hearing, the demurrers were sustained, and the petition dismissed, "without prejudice to the right of the Savannah, Florida and Western Railway Company to file a petition for the payment of any money which became due to it from the Jacksonville, Tampa and Key West Railway Company on account of operating expenses, within six months next preceding the appointment of a receiver herein." From the decree thus rendered, the Savannah, Florida & Western Railway Company appeals.

John T. Hartridge, for appellant.

J. C. Cooper and R. W. Liggett, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and MAXEY, District Judge.

MAXEY, District Judge, after stating the case, delivered the opinion of the court.

The appellant claims an indebtedness of $45,352.32 against the appellee the Jacksonville, Tampa & Key West Railway Company, on account of terminal facilities supplied the latter from August 1, 1888, to July 30, 1892, and insists that its demand is a preferential claim, superior in dignity to that of the bondholders, and hence entitled in priority of payment. The Jacksonville, Tampa & Key West Railway Company went into the hands of a receiver, July 23, 1892; and the receiver was authorized by the order of the court to pay, out of the earnings and income of the property, for such repairs, supplies, labor, and services as, in his judgment, should be necessary or proper to conserve and operate the railway, and to pay the indebtedness of the railway company incurred for expenses of operation during the six months next preceding the order of appointment. The account attached as an exhibit to the appellant's petition of intervention, if we understand its confused statement, embraces the period beginning August 1, 1888, to the appointment of the receiver, July 23, 1892, and also the interval between the date of such appointment and July 30, 1892. In the operation of the railway during the latter period, the receiver availed himself of the terminal facilities supplied by the appellant. It appears from the petition that the Jacksonville, Tampa & Key West Railway Company had no terminal facilities at Jacksonville. Those furnished were therefore indispensable to the successful operation and management of the railway. They added to the income, and enhanced the value, of the property in the receiver's hands. Indeed, without the facilities supplied by the appellant, the receiver could have operated the railway only at a serious disadvantage. It is therefore only right and proper that he should pay for the use and enjoyment of the property, certainly for the period of its occupancy by him (Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824; Oil Co. v. Wilson, 142 U. S. 313, 12 Sup. Ct. 235; Carswell v. Trust Co., 20 C. C. A. 282, 74 Fed. 88; Railroad Co. v. Lamont, 16 C. C. A. 364, 69 Fed. 23), not necessarily at the rate fixed by the contract, but the reasonable rental value of its use, to be determined by the proof (Carswell v. Trust Co., supra).

The appellant, then, being entitled to a partial recovery on the case made by the petition of intervention, the court erred in sustaining the demurrers and dismissing the suit. It is a fundamental rule of equity pleading that "if any part of the bill is good, and entitles the complainant either to relief or discovery, a demurrer to the whole bill cannot be sustained." Livingston v. Story, 9 Pet. 658; Pacific R. Co. of Missouri v. Missouri Pac. Ry. Co., 111 U. S. 520, 4 Sup. Ct. 583; Heath v. Railway Co., 8 Blatchf. 407, Fed. Cas. No. 6,306.

As the case must be reheard in the circuit court, it is deemed proper to say that we would not be understood as restricting the appellant's measure of recovery, under the contract, to the period covered by the receivership; nor do we hold that it may recover, for that period, for all the items included in the account. An expression of opinion as to these questions is for the present reserved. As the case is presented, we must decline also to pass upon other difficult and important questions arising upon the assignment of errors. These involve, among others, the application of the landlord's lien laws of Florida, and suggest, rather than directly raise, the more serious question as to the effect of a continuance of the contract, pending the receivership, upon the rights of the holders of the various issues of bonds. No steps appear to have been taken by any of the parties at interest, since the railway was placed in the hands of a receiver, to annul or modify the pre-existing contract of appellant and the Jacksonville, Tampa & Key West Railway Company. Hence the relationship which the receiver bears to that contract (New York, P. & O. R. Co. v. New York, L. E. & W. R. Co., 58 Fed. 268), and the effect of its continuance, present questions which should only be determined upon a record more specific and distinct than the one before us. These questions are merely suggested on this appeal that the appellant may, if deemed advisable, so amend its petition and exhibit as to present in a simple and lucid manner the precise grounds relied upon for a recovery, to the end that the court may act advisedly and with due intelligence in deciding questions of such gravity and importance to the parties interested. Upon this appeal the sole point decided is that the petition of intervention, considered in connection with the annexed statement of account, discloses that the appellant is entitled, at least, to a partial recovery, and that, therefore, the demurrers should not have been sustained and the petition dismissed.

For the error indicated, the decree of the circuit court is reversed, and the cause remanded, with directions to set aside the order sustaining the demurrers and dismissing the petition; the cause thereafter to proceed according to the established rules of equity practice.