LOVELAND & HINYAN CO. v. BLAIR et al.

(Circuit Court of Appeals, Sixth Circuit. April 6, 1915.)

No. 2569.

1. RECEIVERS ⬡151—PAYMENT OF CLAIMS—BURDEN OF PROOF.

On an application to the court, appointing receivers for a railroad company, to require the receivers to pay a judgment for loss and damage to freight, as it was claimed they were required to do by the order appointing them, where the claimants did not contend that they were entitled to payment out of anything but income, and there was no evidential showing that the receivers were in possession of the necessary funds, the application was properly denied.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 269–278; Dec. Dig. ⬡151.]

2. RECEIVERS ⬡151—PAYMENT OF CLAIMS—CONSTRUCTION OF ORDER OF APPOINTMENT.

An order appointing receivers for a railroad company, and authorizing them to pay, among other expenses, such loss and damage freight claims arising from the previous operation of the road as, in their judgment on examination, might properly be paid as expenses of operation, invested the receivers with a discretion concerning the payment of such claims, and did not purport to bind them, much less the court appointing them; and, while such discretion could not be arbitrarily exercised, the court's denial of an order requiring the receivers to pay indicated its belief that the refusal to pay was not an abuse of discretion.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 269–278; Dec. Dig. ⬡151.]

3. RAILROADS ⬡209—RECEIVERS—PRIORITY OF PAYMENT—OPERATING EXPENSES.

Where income from a railroad in the hands of receivers properly applicable to operating expenses has been diverted to the payment of a mortgage indebtedness, to the prejudice of claimants who have, within a limited time prior to the receivership, rendered services, furnished supplies, or the like, to the railroad, and to the enhancement alike of the property and the securities upon it, the bondholders may be required to reimburse the fund applicable to the payment of such claimants; but where there has been no diversion of current income, either before or after the appointment of a receiver, and no surplus income during the receivership out of which unpaid debts of the income can be paid, the contractual rights of the secured creditors afford them protection.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 692–695; Dec. Dig. ⬡209.]

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action by the American Brake Shoe & Foundry Company against the Pere Marquette Railroad Company, in which Frank W. Blair and others were appointed receivers of the railroad company. From an order denying an application to require the receivers to pay a judgment against the railroad company, the Loveland & Hinyan Company appeals. Affirmed.

C. J. Hall, of Grand Rapids, Mich., for appellant.

J. C. Bills, of Detroit, Mich., for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARRINGTON, Circuit Judge. On April 5, 1912, an order was entered in the court below, appointing receivers of the Pere Marquette Railroad Company, at the suit of the American Brake Shoe & Foundry Company. The nature of the claim of the plaintiff in that case does not appear, saving an inference that it was for supplies. On June 18, 1913, the Loveland & Hinyan Company sought, through intervention, to obtain an order requiring the receivers to pay petitioner $5,500, in satisfaction of a judgment theretofore recovered by it against the railroad company. The order was denied, and the petitioner appeals.

Petitioner's judgment grew out of loss and damage sustained upon 70 car load shipments of freight over the Pere Marquette Railroad and its connecting carriers, between September 27, 1909, and November 10, 1911. The shipments consisted of peaches, apples, plums, and potatoes. The shipments all originated in Michigan, 3 of them having been made to points within, and 67 to points without, the state. The entire loss ($8,914.32) appears to have been caused by faults of the initial road and its connecting carriers, through delays in furnishing cars and in transit, shortage, rough handling, and improper equipment. All freight charges were paid to the railroad company, and claims for such losses and damages seem to have been filed with the company, before the receivers were appointed.

On April 3, 1912, two days before appointment of the receivers, the petitioner commenced suit in the circuit court for the county of Kent, Mich., against the Pere Marquette Railroad, to recover these losses and damages. On April 12, 1913, in pursuance of a compromise, a judgment of confession was entered in the Kent circuit court in favor of the petitioner and against the railroad company (not the receivers) for the amount now claimed. The sole basis of the claim that the receivers shall be compelled to pay the judgment is a provision of the order appointing them. The order of appointment contains provisions authorizing the receivers to take possession of the railroad property, control and operate it, secure and develop the business, collect rates, etc., employ the income to preserve the property and the rights and interests of the company, and also:

"* * * To make appropriate payments from time to time in their discretion of current and unpaid pay rolls; also of bills for material and supplies incurred in the ordinary operation of said railroad system from time to time within six months prior hereto; also of such loss and damage freight claims arising from the previous operation of said property as in their judgment on examination may properly be paid as expenses of operation; also of expenses of maintaining and operating said railroads and properties from and after this date. * * *"

[1] It is alleged in the petition that the receivers have in their possession funds collected from rates, etc., sufficient to pay the judgment. This is in effect denied in the answer, where it is alleged that the funds in the hands of the receivers "are not and have not been sufficient to pay the receivership operating expenses, including taxes, labor, and material for repairs and replacements and other items which are clearly entitled to priority in payment"; but such "other items" are not specified. No evidence was offered by either side. Upon this state of the record the petitioner's insistence is that the portion of the appointing

order which relates to "loss and damage freight claims" is mandatory, and that, since the order in terms applies to claims "arising from the previous operation" of the road, the receivers are amenable to mandatory process. The petitioner does not claim, however, that it is presently entitled to an order of payment out of anything but income. The most obvious answer, then, to the contention that the receivers are open to peremptory order, is the absence of an evidential showing that the receivers are in possession of the necessary funds.

[2] Furthermore, it is to be observed that the insistence of petitioner is in effect aimed against the very court that made the appointing order; indeed, it amounts to a claim that, having made the order, the court is bound to enforce it; and this, too, regardless of consequences to the maintenance and operation of the railroad. Surely this could not have been the purpose of the appointing order. The argument overlooks the portion of the order which restricts payment of this class of claims to such as in the receivers' "judgment, on examination, may properly be paid as expenses of operation." This plainly invests the receivers with a *discretion* concerning the payment of such claims; it does not purport to bind the receivers, much less the court; it is a privilege, not a command. It may well be conceded that discretion so vested is not to be arbitrarily exercised; but the denial of the order here sought plainly implies that the court below did not believe that the receivers' refusal to pay the judgment was an abuse of their discretion.

Counsel for petitioner cite, in support of the validity of the provision relied on in the appointing order, decisions showing a broad power in a chancellor to impose conditions upon which an appointment of a receiver of a railroad will be made at the suit of a trustee for mortgage bondholders (Dow v. Memphis L. R. R. Co. [C. C.] 20 Fed. 260; Farmers' Loan & Trust Company v. Kansas City, etc., R. R. Co. [C. C.] 53 Fed. 182); and they claim the provision is not unusual, calling attention to a similar provision which appears, though it is not passed on, in Southern Railway v. Carnegie Steel Co., 176 U. S. 257, 267, 20 Sup. Ct. 347, 44 L. Ed. 458. Those cases, however, did not involve a question like the present one, nor do they intimate that the *form* of the appointing order is decisive of such a question. Counsel also rely on Fordyce v. Omaha, etc., R. Co. (C. C.) 145 Fed. 544, 547, 555, where, under an issue between a claimant and mortgage bondholders, it was held that, although the appointing order "may have directed that preferential claims for supplies and materials be paid out of the proceeds of the sale or the corpus of the property," the purchaser might contest the claims on the ground that they were subordinate in right to that of the prior mortgagee; and this was based on a ruling made in Louisville, etc., Railroad Co. v. Wilson, 138 U. S. 501, 506, 11 Sup. Ct. 405, 407 (34 L. Ed. 1023), where Mr. Justice Brewer said:

"We would not be understood as asserting, even by implication, that the terms of an order of appointment of a receiver vest in all claimants an absolute right as against the security holders. Such terms may be, and doubtless are, a protection to the receiver; and what he does and pays within those terms may be, thereafter, beyond the challenge of any party interested in the property. But when he has not acted, and the question is presented to

the court as to the liability of the property for any claim, the court is not foreclosed by the order of appointment, but may consider and determine equitably the extent of liability of the property to such claim, and what its rights of priority may be. Hence, as the receiver did not pay this claim, the parties in interest may rightfully challenge its priority, even if it were within the very letter of the order of appointment of the receiver."

See, also, Gregg v. Mercantile Trust Co., 109 Fed. 220, 226, 48 C. C. A. 318 (C. C. A. 6th Cir.).

[3] Thus the fallacy of the position taken by the petitioner is even more plainly revealed by its resort to decisions in which contests between unsecured and secured creditors of insolvent railroad companies are determined, for those decisions illustrate the relations of such creditors, respectively, to the income of the companies. Both of these classes of creditors are rightfully interested in the income—the first, in the portion required as operating expenses; and the second, in any surplus—and so the application which has been made of income frequently gives rise to important questions. The problem usually presented in such contests is whether income properly applicable to operating expenses has been diverted by the mortgagor to the payment of mortgage indebtedness, and to the prejudice of claimants who have, within a limited time prior to the receivership, rendered services, furnished supplies, or the like, to the railroad, and to the enhancement alike of the property and the securities upon it. Where such a diversion is shown, the bondholders may, under an appropriate issue, be required to reimburse the fund applicable to the payment of "debts of the income" to the extent of the diversion. Central Trust Company v. East Tennessee, V. & G. R. R. Co., 80 Fed. 624, 628–630, 26 C. C. A. 30 (C. C. A. 6th Cir.). This is upon the principle of restoration. Fosdick v. Schall, 99 U. S. 235, 254, 25 L. Ed. 339; Southern Railway v. Carnegie Steel Co., 176 U. S. 257, 274, 296, 297, 20 Sup. Ct. 347, 44 L. Ed. 458, and citations. Where "there has been no diversion of current income, either before or after the appointment of a receiver, and no 'surplus income' during the receivership, out of which unpaid debts of the income can be paid," the contractual rights of the secured creditors afford them protection. International Trust Company v. T. B. Townsend Brick & Contracting Co., 95 Fed. 850, 860, 37 C. C. A. 396 (C. C. A. 6th Cir.); Fosdick v. Schall, supra, at page 254 of 99 U. S. (25 L. Ed. 339). Conversely, if a diversion of income does take place during a receivership alone, it may form a basis for allowance of preferential claims even as against bondholders. Union Trust Company v. Souther, 107 U. S. 591, 595, 2 Sup. Ct. 295, 27 L. Ed. 488; Gregg v. Mercantile Trust Co., supra, at page 226 of 109 Fed. (48 C. C. A. 318). But we need not consider this class of cases farther, for the present intervention is lacking both in issue and parties necessary to present any question of diversion of income.

It is claimed by both sides that the losses entering into the judgment in question occurred for the most part upon the railways connecting with the Pere Marquette; and, as another reason why the judgment should be paid, counsel for petitioner urge that such losses are recoverable by the receivers under the Carmack amendment (34 Stat. 595 [1]). Presumably efforts of this kind have been made, but here again we are

---

[1] Act June 29, 1906, c. 3591, § 7, pars. 11, 12 (Comp. St. 1913, § 8592).

without evidence. We assume, without deciding, that there was some object beneficial to the railroad in making the provision relied on in the appointing order; we assume, also, that applicable funds may accrue during the life of the receivership; and so we are disposed to believe the petitioner should have opportunity to present its claim, upon appropriate intervention and evidence, during the proceedings to wind up the receivership, whether such proceedings shall be had upon sale and marshaling of liens, or otherwise.

The order is affirmed, without costs, but also without prejudice to the right to present the claim later.