## LOVELAND & HINYAN CO. et al. v. PERE MARQUETTE R. CO.

(Circuit Court of Appeals, Sixth Circuit. December 2, 1924.)

### No. 4085.

**1. Receivers ☞99(1)—Valid and normal claims by shippers or consignees are "operating expenses" of railroad.**

Current valid claims for loss of, or damage to, freight shipments, in normal volume, are in broad sense "operating expenses" of railroad.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Operating Expenses.]

**2. Receivers ☞163—Receivers held not entitled arbitrarily to refuse payment of shippers' claims.**

Railroad receivers authorized to pay such shippers' claims, as on examination may properly be classed as operating expenses, *held* not authorized arbitrarily to refuse payment of particular claims, while paying others indistinguishable therefrom.

**3. Receivers ☞163—Receivers held to have burden of showing good cause for discrimination between shippers' claims.**

Railroad receivers authorized to pay shippers' claims, such as might properly be classed as operating expenses, *held* to have burden of showing good cause for discrimination against particular claims, nor was matter one between claimants and mortgagees as general owners of funds.

Appeal from the District Court of the United States for the Southern Division of the Eastern District of Michigan; Arthur J. Tuttle, Judge.

In the matter of the receivership of the Pere Marquette Railroad Company. From an order of the District Court, affirming the master's report, refusing payment of claims by the Loveland & Hinyan Company and others, claimants appeal. Order reversed, and case remanded.

See, also, 222 F. 207, 137 C. C. A. 521.

Clare J. Hall, of Grand Rapids, Mich. (Joseph R. Gillard, of Grand Rapids, Mich., on the brief), for appellants.

J. C. Kauffman, of Detroit, Mich. (William K. Williams and Seward L. Merriam, both of Detroit, Mich., on the brief), for appellee.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. [1] Upon the filing of creditors' bill in the court below, receivers were appointed for the Pere Marquette Railroad Company. It is at once apparent that the current and normal volume of valid claims made by shippers or consignees for failure to carry and deliver freight under the contract of shipment constitutes, in a certain broad sense, an operating expense, for, unless the railroads habitually paid such valid claims, they would soon have no freight to carry. By more restricted definition these claims would be excluded from that class of expense, and it is quite possible that a claim of this character might fairly be included, or excluded, according to its class circumstances. Perhaps upon this theory, the order of appointment, after authorizing the receivers to pay various existing claims, including those for material and supplies arising within six months, continued: "Also of such loss and damage freight claims arising from the previous operations of the property as, in their judgment on examination, may properly be paid as expenses of operation."

The appellants here were shippers, and in due course established their loss and damage claims—one by adjustment with the railroad, and one by a judgment. The receivers refused to pay. One of the present appellants had appealed to this court from a former order of the District Court, declining to compel payment by the receivers. We held (Loveland v. Blair, 222 F. 207, 137 C. C. A. 521), that, so far as the application for such an order depended on the receivers' duty to devote the receivers' net income to such payment before paying interest on the mortgages, the application was premature, because no such appropriation of net income yet appeared, and that, in so far as the application depended on judicial control of the receivers' discretion, it did not appear that the discretion had been abused.

In the due progress of the receivership court proceedings, all claimants were directed to file and prove their demands before the master. These appellants proved their respective demands, and also showed that at the close of the receivership there had been some $3,000,000 or more of net income diverted to the payment of interest on mortgages; that the receivers had consistently and finally refused to pay these two claims, but had paid others of the same character to the amount of $200,000, and, so far as indicated by claims filed before the master, had paid every claim of this character excepting these two. The master's report, in the course of disposing of a great number of controversies about different claims, held, as to these two, that the claims had no right, under the six months rule and analogous principles, to priority over mortgage interest; that the permission given the receivers to pay such of these claims as they thought best was in the nature of consent by the

mortgagees that some of their funds might be used for this purpose; and that the consent went no further than its limitations indicated. Hence the master thought the claimants had no lawful ground to complain at being excluded from these voluntary concessions by the mortgagees, and reported against their claims. The District Court affirmed the report.

We find it unnecessary to consider the several interesting questions which were discussed by the master and argued by counsel before us. We think the matter may be disposed of solely as one of proper construction and application of the order permitting the receivers to make these payments. Very likely the master and the court below gave more force than we intended to our comment upon this order in our previous opinion, in which we said: "This plainly invests the receivers with a discretion concerning the payment of such claims; it does not purport to bind the receivers, much less the court; it is a privilege, not a command." However, this was immediately followed by the statement that such discretion should not be arbitrarily exercised, and that no such arbitrary exercise then appeared.

We are clear that this clause in the order must be construed as giving the receivers the right to say, within reasonable limits, whether such claims were filed promptly, whether they were supported by sufficient proof, whether they depended upon the default of this railroad or of some other, and whether the default was of the character which created a clear legal claim, or only one that it might be good policy for them to pay, though perhaps not liable. Other similar opportunities for the exercise of proper discretion suggest themselves. The order could not have been intended to permit the receivers to pay one claim and refuse another, indistinguishable from it on any substantial and lawful basis. To do so would be the grossest discrimination between shippers, and would make the court and its receivership the instrument of possible escape from the fundamentals of the Interstate Commerce Act (Comp. St. § 8563 et seq.), and even from its criminal provisions. Only the plainest language could justify imputing such an intent to the appointing court, or even to the parties who were agreeing upon the form of the order.

[2, 3] We conclude, therefore, that the receivers had no right to distinguish between individuals, but only between properly differentiated classes, and when it appeared in this case that there was net income naturally

to be resorted to for this class of claims, and that the receivers had paid many others, and probably all others, of apparently the same class, and as to which the claimants knew no distinction, the burden was clearly on the receivers to show good cause for their discrimination. This they did not do.

This matter is not, as it has been argued, merely one between these claimants and the mortgagees as general owners of the fund. It is one between the court and its receivers. Such discrimination as this must be presumed to be was misconduct by the officers of the court, and, though doubtless made under good-faith misapprehension of legal rights, the court cannot permit it to stand.

The matter having been now pending for many years and the receivers having had full opportunity to make any defense which may exist, we think there should be no further delay, and that the claims should be finally allowed and promptly paid.

The order below is reversed, and the case remanded for further proceedings in accordance with this opinion.