LURTON, Circuit Judge,
after making the foregoing statement of facts, delivered the opinion of the court.
The question as to whether there was a diversion of the current income by the railroad company to the payment of interest on the foreclosed mortgage debts, or in the permanent improvement of the mortgaged property, was principally one of fact, and was referred to a special commissioner, who reported that there had been no such diversion. The exceptions to this finding were considered by the court below, and overruled. We think it was not error.to exclude from consideration income applied to the payment of interest on the senior mortgages. The junior mortgagees did not receive the income so paid, even if it was technically a diversion, and cannot be called on to reimburse the fund applicable to the payment of the debts of the income for such diversion. St. Louis, A. & T. H. R. Co. v. Cleveland, C. C. & I. Ry. Co., 125 U. S. 658, 8 Sup. Ct. 1011. This doctrine of a diversion of income, and the liability of mortgagees to restore the income thus diverted, was first formulated in Posdick v. Schall, 99 U. S. 235. Speaking of the ground upon which the mortgagees may be postponed in favor of creditors who had a right to look to the application of current income in payment of their debts, Chief Justice Waite, at page 254, said:
“Whatever is done, therefore, must be with a view to a restoration by the mortgage creditors of that which they have thus inequitably obtained. It follows, therefore, that, if there has been in reality no diversion, there can be no restoration, and that the amount of the restoration should be made to deiiend upon the amount of the diversion.”
During the period of time covered by the purchase of the materials and supplies embraced in the several claims of appellants, the net earnings were probably insufficient to justify the payment of interest on the foreclosed mortgage debts, and to make certain
*626 improvements shown to hare been made during that time. But it is also shown that, during the same period, money was borrowed on open account, more than sufficient to equal the diversion complained of, which went into a common treasury, from which operating expenses, preferential claims, interest, and improvements were paid, without any definite showing as to whether the borrowed money was applied to the payment of interest and improvements, or to current income debts. Under this system of bookkeeping, the addition of borrowed money to the income arising from operation showed a substantial surplus after payment of the great mass of income debts, and all disbursements on account of interest upon the two mortgages foreclosed, as well as upon improvements in the roadway. Prior to the period covered by the maturity of appellants’ claims, there was a surplus of gross earnings over all operating expenses; but it cannot be contended that the company was under any obligation to future creditors to accumulate a surplus to meet possible deficiencies in the income to meet future income debts, or that it was improper to apply such surplus in payment of interest. St. Louis, A. & T. H. R. Co. v. Cleveland, C. C. & I. Ry. Co., 125 U. S. 658-675, 8 Sup. Ct. 1011. Whatever diversion there may have been of income to payment of debts or liabilities, not properly debts of the income, seems to have been more than reimbursed by the money borrowed. The burden is upon complainants to show that there has been a misappropriation of earnings to the improvement of the mortgaged property, or to the payment of interest, before the mortgagees can be justly called upon to reimburse the fund applicable to debts of the income in consequence of such diversion. If interest was paid or improvements made out of borrowed money, then there was no diversion; or if made out of gross earnings, and the latter was reimbursed by borrowed money, the diversion was made good. The abstracts showing income from all sources and disbursements upon all accounts are somewhat complicated, in consequence of the mode of bookkeeping adopted. The commissioner and court below concurred in reporting that there was no diversion shown. In the absence of very cogent evidence of mistake of fact, or of some error of law, the finding of fact by the commissioner must be accepted as final. Emil Kiewert Co. v. Juneau, 24 C. C. A. 294, 78 Fed. 708; Kimberly v. Arms, 129 U. S. 512-524, 9 Sup. Ct. 355; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894; Turley v. Turley, 85 Tenn. 256, 1 S. W. 891. But, independently of any diversion of current income, there is a class of debts, incurred in maintaining the operation of a railway, which, under special circumstances, and subject to very positive limitations, has been held to outrank, in priority of payment, contract liens. In Miltenberger v. Railway Co., 106 U. S. 286-311, 1 Sup. Ct. 140. 162, it appeared that the receiver had claimed credit for certain claims paid by him for materials and supplies furnished and purchased before his appointment by the railroad company, upon the ground that “the creditors threatened not to furnish any more supplies on credit unless they were paid the arrears.” The payments were allowed, the court saying:
*627 “It cannot be affirmed that no items wbicb accrued before the appointment of a receiver can be allowed in any case. Many circumstances may exist which make it necessary, and indispensable to the business of the road and the preservation of the property, for the receiver to pay pre-existing debts, of certain classes, out of the earnings of the receivership, or even the corpus of the property, under the order of the court, with a priority of lien. Yet the discretion to do so should be exercised with very great care. The payment of such debts stands prima facie, on a different basis from the payment of claims arising under the receivership, while it may be brought within the principle of the latter by special circumstances. It is easy to see that the payment of unp'aid debts for operating expenses, accrued within ninety days, due by a railroad company suddenly deprived of the control of its property, due to operatives in its employ, whose cessation from work simultaneously is to be deprecated, in the interest both of the property and of the public, and the payment of limited amounts due to other and connecting lines of road for materials and repairs, and for unpaid ticket and freight balances, the outcome of indispensable business relations, where a stoppage of the continuance of such business relations would be a probable result'in case of nonpayment,—the general consequence involving largely, also, the interests and accommodation of travel and traffic,—may well place such payments in the category of payments to preserve the mortgaged property, in a large sense, by maintaining the good will and integrity of the enterprise, and entitle them to be made a first lien.”
In Burnham v. Bowen, 111 U. S. 776-781, 4 Sup. Ct. 675, it appeared that there had been no diversion of income, and that an arrearage of debt for materials and supplies was due to the insufficiency of the income to pay necessary operating expenses. The court allowed the claim out of the income earned by the receivers, upon the ground that it “was incurred to keep the road running, and thus preserve the security of the bond creditors.” “Under these circumstances,” said the court, “we think the debt was a charge, in equity, on the continuing income,—as well that which came into the hands of the court after the receiver was appointed as that before. When, therefore, the court took the earnings of the receivership, and applied them to the payment of the fixed charges on the railroad structures, thus increasing the security of the bondholders at the expense of the labor and supply creditors, there was such a diversion of what is denominated in Fosdick v. Schall the ‘current debt fund’ as to make it proper to require the mortgagees to pay back. So far as current expense creditors are concerned, the court should use the income of the receivership in the way the company would have been bound in equity and good conscience to use it if no change in the possession had been made. This rule is in strict accordance with the decision in Fosdick v. Schall, which we see no reason to modify in any particular.” The liberality with which this equity was extended by some of the circuit courts in favor of general creditors induced the supreme court, in Kneeland v. Trust Co., 136 U. S. 89-97, 10 Sup. Ct. 950, 953, to call attention to the necessity of preserving the general priority of contract liens over all but a limited class of claims. Through Mr. Justice Brewer, the court said:
“The appointment of a receiver vests in the court no absolute control over tbe property, and no general authority to displace vested contract liens. Because, in a few specified and limited cases, this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. It has been assumed that a *628 ecrart appointing a receiver could rightfully burden the mortgaged property foi the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional' upon the payment of all unsecured indebtedness in preference to the mortgage liens sought to be enforced. Can anything be conceived which more thoroughly destroys the sacredness of contract obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which by the rulings of this court have been declared to have an equitable priority. No one is bound to sell to a railroad company, or to work for it; and whoever has dealings with a company whose property is mortgaged must he assumed to have dealt with it on the faith of its personal .responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens. St. Louis, A. & T. H. R. Co. v. Cleveland, C., C. & I.. Ry. Co., 125 U. S. 658, 673, 8 Sup. Ct. 1011, 1017.”
In the subsequent, case of Thomas v. Car Co., 149 U. S. 95-117, 13 Sup. Ct. 824, 831, the observations touching the sacredness of contract obligations which we have quoted from Kneeland v. Trust Co. were reaffirmed, and a claim for rental of cars was disallowed as a preferential debt, the court saying:
“The case of a corporation for the manufacture and sale of cars, dealing wdth a railroad company whose road is sub.iect to a mortgage securing outstanding bonds, is very different from that of workmen and employes, or of those who furnish, from day to day, supplies necessary for the maintenance of the road. Such a company must be regarded as contracting upon the responsibility of the railroad company, and not in reliance upon the interposition of a court of equity.”
From these cases it may be deduced that in respect of railroad mortgages there is an implied agreement that all proper operating expenses of such companies, while under control of the mortgagors, are to be paid out of current receipts, and that any diversion of such income by which current operating expenses are left unpaid is a misappropriation of the income, and upon a proper showing the mortgagees receiving the benefit will be required to reimburse the fund applicable to the payment of these “debts of the income,” to the extent of the diversion. It may further be - deduced that, independently of any diversion, the necessary operating expenses of a mortgaged railroad, constituting a first charge upon the income while under the control of the mortgagor, will continue to be a charge upon the income under a receivership, and, if necessary, upon the corpus of the property. This latter equity is supposed to arise from the nature of the public duties resting upon such companies, and upon the necessity of such expenditures in preserving the property as a going concern for the ultimate benefit of the mortgage creditors. The debts entitled to displace contract liens must, in the nature of this latter-mentioned equity, be such as were incurred in the necessary operating expenses, and constitute but a limited class, fairly defined by the cases we have cited. Debts of this class must be such as were created shortly before the *629 receivership, and contracted under circumstances reasonably indicating a reliance upon a proper application of the current income to their payment. In the case of Bound v. Railway Co., 8 U. S. App. 461, 7 C. C. A. 322, and 58 Fed. 473, such a creditor was held to have impliedly waived his right to look to the income earned pending an agreed credit of eight months, with privilege of renewal. The supreme court has not definitely laid down any limit within which such debts must have been created to entitle them to outrank mortgage liens in payment. In the case of Miltenberger v. Railway Co., elsewhere cited, a limit of 90 days was adopted, while in the cases of Trust Co. v. Souther, 107 U. S. 591, 2 Sup. Ct. 295, and United States Trust Co. v. Wabash W. Ry. Co., 150 U. S. 287, 14 Sup. Ct. 86, a limit of 6 months was not disapproved. In other cases, under special circumstances, claims originating more than 6 months prior to the receivership have been allowed priority. Hale v. Frost, 99 U. S. 389; Burnham v. Bowen, 111 U. S. 776, 4 Sup. Ct. 675. It is to be observed that in neither of these latter-mentioned cases was there any general order touching the payment of such claims. The practice upon the circuits has varied in this matter of a time limit upon these preferential claims, and the circuit courts of appeals have shown no unanimity in fixing upon such a limitation. In the Fourth circuit it has been ruled that they must have been incurred within a “reasonable time” before the appointment of a receiver, and a claim was allowed priority under a very peculiar receivership, which was created from 9 to 11 months before. It must be admitted that the rule of “a reasonable time” furnishes no sure guide, and leaves the whole matter open to the discretion of the court. The same court, in Boston Safe-Deposit & Trust Co. v. Richmond & D. R. Co., 8 U. S. App. 547, 10 C. C. A. 323, and 62 Fed. 205, adopted a limitation of 90 days, in an opinion by Chief Justice Fuller. In Railroad Co. v. Lamont, 32 U. S. App. 480, 16 C. C. A. 364, and 69 Fed. 23, the court of appeals for the Eighth circuit held the time limit no bar, and allowed a claim which in part originated some three years before the receivership. In the Seventh circuit, we have the authority of Mr. Justice Harlan for saying that a limitation of six months has been regarded as a proper limitation upon such claims. The precise grounds upon which such a rule rests are so well stated by the learned justice that we quote and adopt his reasoning, as reported in Thomas v. Railroad Co., 36 Fed. 808. The justice, on this subject, said:
“The general rule that has obtained in this circuit for many years, though not fully or expressly formulated in any published decision, has been not to charge the income of mortgaged property accruing during a receivership, or the proceeds of sale of such property, with general debts for labor, supplies, and equipment, back of the six months immediately preceding the appointment of a receiver. While the court has not, perhaps, committed itself against applying a different and more liberal rule when the special circumstances or equities of the-case demand such a course, the general rule is as just stated; and I am unwilling, in this case, and at this late day, to depart from it. Besides, I am of opinion that, under the circumstances that usually attend the administration of railroad property by the courts through receivers, the rule stated is a wise and salutary one. It would not do to charge the income of *630 mortgaged railroad property, managed by a receiver, or the property itself, with every debt incurred in all its previous history for labor, supplies, or equipment. As was said in Fosdick v. Schall, the business of all railroad companies is, to a greater or less extent, done on credit. Those who perform labor, or furnish supplies and equipment, usually expect and contract to be paid within a reasonable time; and they do not ordinarily perform labor, or furnish supplies or equipment, after the railroad company has failed to pay within such time for what has been previously done or furnished. Expenses incurred within such reasonable time constitute what are called ‘current expenses,’ which ought, if possible, to be paid out of the receipts during the same period. When, therefore, debts of that character remain unsettled, or are not put in suit, for such a time as would be deemed unreasonable, it may be fairly presumed that the creditors have ceased to look to current receipts for payment, and have accepted the position of general creditors, who, as such, would have no claim for indemnity upon any special part of the income.”
In this circuit a six-months rale has been almost universally imposed, and a large number of insolvent railroad companies have been wound up, and their property distributed among creditors, under general orders so limiting the payment of such claims. In this case the receivers were appointed by Jackson, circuit judge (afterwards Mr. Justice Jackson), who made an order in these words:
“In these causes, upon the petition of Charles McGhee and Henry Pink, receivers, etc., it is ordered that they are hereby authorized and directed to pay off the pay rolls of the respondent for the month of June, 1892, and other unpaid wages, due to employes, accruing not more than five months prior to 1st day of June, 1892; also, to pay to the parties entitled all amounts appearing to their credit for cross-ties, wood, fuel, materials, and supplies furnished the respondent within five months prior to said- 1st day of June for the purpose of carrying-on its operations; making payments as aforesaid out of any moneys coming into their hands as receivers as hereafter arising out of the operation of said road, and at such times and in such amounts as, in their discretion, may be properly done in the proper management and direction of said railroad committed to their charge.”
As these receivers were appointed June -24, 1892, it will be noticed that this limitation was practically one of six months; January 1, 1892, being fixed as a date more convenient to adjust such claims than one falling so near the end of a month and of a year as a date precisely six months before the receivership. The appellants present no special circumstances which will justify a departure from this general order, under which all such claims have been settled, and we feel altogether indisposed to arbitrarily extend a limit imposed in the sound discretion of the circuit court.
For appellants, it is further insisted that the order made by Judge Jackson should be construed as applying to the time when their claims accrued, and that, in respect of at least parts of one or more of their claims, the supplies were furnished upon a credit of either 30 or 60 days, and did not fall due until after January 1, 1892. The order plainly limited the receivers to the payment of claims for supplies “furnished” on or after January 1, 1892. The order can bear but one construction. The time of delivery by the seller to the railroad company is the time when they were “furnished.” In each instance where this contention is now made, the items constituting the claims were delivered to a carrier, consigned to the railroad company, prior to January 1, 1892. The date of such delivery fixes the date when they were “furnished.” A part of *631 the claim presented by Matthews, Horthrup & Co. is for advertising matter furnished after January 1, 1892. This was disallowed upon the ground that advertising could not be regar ded as a material or supply used in the operation of the railroad. Ho precedent for the allowance of a claim for advertising is furnished us. The only instance to which attention has been called where such a claim has been made for advertising matter is in the case of Poland v. Railway Co., 52 Vt. 144. The claim was disallowed, as not being supplies or materials furnished for the operation of the road. We are indisposed, under the admonitions of the supreme court concerning the disposition of certain courts to extend this rule, to apply it to supplies which cannot be regarded as in any sense tending to preserve the mortgaged property for the bond creditors, or adding to the value of their security. The several decrees appealed from must be, and accordingly are, affirmed.