LOUISVILLE & N. R. CO. et al. v. CENTRAL TRUST CO. OF NEW YORK et al.

(Circuit Court of Appeals, Sixth Circuit. June 1, 1898.)

No. 553.

1. RAILROADS—RECEIVERS—CLAIMS FOR TRACK RENTALS.
    A claim against a railroad company which is in the hands of a receiver under foreclosure proceedings, for rent of track privileges accruing prior to the appointment of the receiver, is not entitled, as against the mortgage bondholders, to priority of payment out of the proceeds of sale, where no special equities are shown, and it appears that the lessor relied for payment upon the general credit of the lessee and its sublessee.

2. SAME.
    Track rentals are not in general recognized as of the kind of claims which may become entitled, on the appointment of a receiver, to priority over the mortgage bonds.

Appeal from the Circuit Court of the United States for the District of Kentucky.

This is a suit upon the intervening petition of the Louisville & Nashville Railroad Company and the Kentucky Central Railroad Company, filed in the circuit court for the district of Kentucky, in a consolidated suit in equity there pending, consisting of two original cases, one being brought by Samuel Thomas, a creditor of the East Tennessee, Virginia & Georgia Railway Company, and the other a suit by the Central Trust Company of New York, for the foreclosure of a mortgage given by the Louisville Southern Railroad Company to secure its bonds. This petition was presented for the purpose of enforcing a preferential claim upon the fund arising from the sale of the mortgaged property. The claim is founded upon the following facts:

Prior to January 29, 1890, the Newport News & Mississippi Valley Company was operating a railroad running from the East into Lexington, Ky., and stopping at Merino street, in that city, where it had a station. The Kentucky Central Railroad Company also had a line of road running into the city from the north until it reached a point on the west side of Cox street, nearly due west of the station of the Newport News & Mississippi Valley Company, from which point it turned to the east, and extended to the station mentioned. The Louisville Southern Railroad Company had built a railroad from Louisville to Lexington which entered the last-named city from the southwest to a point of junction with the Kentucky Central Railroad at the curve near Cox street, where the Kentucky Central Railroad turned east, as above stated. The Louisville Southern Railroad had no station at Lexington, and it desired to form a connection with the Newport News & Mississippi Valley Company's road. Accordingly, it entered into a contract on the 29th day of January, 1890, with the Kentucky Central Railroad Company, for the use of that company's track from the point of junction of their lines to the station of the Newport News & Mississippi Valley Company, and for certain terminal facilities in the immediate locality. This contract provided, among other things not necessary to be mentioned here, that the Louisville Southern Railroad Company should pay for the use of this portion of the Kentucky Central Railroad Company's track at the rate of 75 cents for each of its cars passing over it, and that all sums due under the contract should become payable during the month following that in which the service was rendered. The contract was to last for the period of 25 years. The Louisville Southern Railroad Company began to use the track under this contract in the latter part of March, 1890. Very soon after that a controversy arose as to whether the contract contemplated payment for the trackage for empty cars. The controversy continued, and the monthly payments were, in consequence, not paid.

On June 27, 1890, the Louisville Southern Railroad Company leased its railroad and assigned the benefits of the above-stated contract to the East Tennessee, Virginia & Georgia Railway Company, and the latter company immediately went into possession of the leased property, and continued to use the track of the Kentucky Central Railroad Company. The above-stated question of the construction of the contract continued unsettled. Matters went on in this way until September, 1891, when the Kentucky Central Railroad Company sold out all its property and contract rights to the Louisville & Nashville Railroad Company, including those inuring to it under the contract with the Louisville Southern Railroad Company. The use of the track continued by the lessee of the last-named company, and without any adjustment of the controversy as to the meaning of the contract under which the privilege was enjoyed. Finally, on the 2d day of May, 1892, the Louisville & Nashville Railroad Company, together with the Kentucky Central Railroad Company, brought suit against the Louisville Southern Railroad Company and its lessee, the East Tennessee, Virginia & Georgia Railway Company, in the circuit court for Fayette county, Ky., to recover for the use of the track from the beginning. This suit remained pending until June 23, 1894, when judgment was rendered for the use of the track by loaded cars against the Louisville Southern Railroad Company during the period prior to the date of the lease, and against both defendants from the date of the lease to the commence-

ment of the suit, rejecting the claim for empty cars. While this suit was pending, and on the 25th day of June. 1892, the suit of Thomas against the East Tennessee, Virginia & Georgia Railway Company was commenced in the circuit court for the district of Kentucky, and a receiver was appointed, who took possession of the railway company's property and exercised the privileges of the trackage contract. Not long afterwards the Central Trust Company of New York commenced suit in the same court against the same company to foreclose a mortgage given by the company to secure its bonds. The two suits were consolidated, new receivers were appointed, and the former receivers were directed to turn the property over to them. On the 1st day of July, 1893, the East Tennessee, Virginia & Georgia Railway Company failed to pay the rent due the Louisville Southern Railroad Company, and the latter company made default in the payment of the interest due on its bonds. On the 3d day of the same month the Central Trust Company of New York commenced suit to foreclose a mortgage given by the Louisville Southern Railroad Company to secure the bonds, and incidentally praying that the lease above mentioned might be canceled. Receivers were appointed in this suit, and the receivers in the consolidated causes against the East Tennessee, Virginia & Georgia Railway Company were ordered to turn over to them the property of the Louisville Southern Railroad Company, which they had theretofore had in their possession, and the new receivers were ordered to pay and be answerable for all just claims against the receivers for the East Tennessee, Virginia & Georgia Railway Company, growing out of their operation of the Louisville Southern Railroad. The several receivers above mentioned continued to use the connecting track under the contract of January 29, 1890.

On November 3, 1894, having obtained their judgment in the Fayette county circuit court as above stated, these petitioners filed their petition of intervention in the court below, reciting the substance of the foregoing statement, stating the situation of the several railroads with reference to each other, and the necessity of the connecting track in the operation of the Louisville Southern Railroad, and, by amendment of the petition, the diversion of earnings, both before and after the appointment of the receivers, to the payment of interest on bonds, and to the purchase of equipment and the betterment of the property; and the petition prayed for payment, out of the proceeds of the sale of the Louisville Southern Railroad property, of the amount alleged to be due for the use of the petitioners' track during the several periods of such use,—first, by the Louisville Southern Railroad Company from the latter part of March, 1890, to June 27, 1890; second, by the East Tennessee, Virginia & Georgia Railway Company from June 27, 1890, to June 25, 1892; and by the receivers after the last-named date. The interveners' claim was referred to the special master, W. O. Harris, to whom all other claims against the fund had already been referred. The master reported, in favor of the interveners, for the use of the track during all the periods for which claim was made, sums amounting, with interest, after deducting some payments, to $5,759.80, upon findings that the trackage was at all times a necessity to the profitable operation of the road, and that there were continuously large diversions of current earnings, more than sufficient to pay all current operating expenses, and that, therefore, the claim was entitled to priority of payment. Exceptions were filed to the allowance of this claim as one entitled to preference over that of the bondholders. At the hearing the court, in effect, sustained the exceptions so far as they related to the claim for track service prior to the date when the receivers took possession of the Louisville Southern Railroad, June 25, 1892, and overruled them so far as they related to the use of the track by the receivers after that date. A decree was entered accordingly, and the interveners have appealed from so much of the decree as disallows priority to the claim for track service while it was used first by the Louisville Southern Railroad Company, and afterwards by its lessee, the East Tennessee, Virginia & Georgia Railway Company.

Helm Bruce, for appellants.

A. P. Humphrey, for appellees.

Before LURTON, Circuit Judge, and SEVERENS and CLARK, District Judges.

SEVERENS, District Judge, having stated the case as above, delivered the opinion of the court.

As will be seen from the foregoing statement of the facts, the circuit court directed that compensation be made for the use of the track, in accordance with the terms of the contract, during the time when the court had possession of the property. We have, therefore, only to determine whether or not the court was right in disallowing priority to the interveners' claim for the track service from the latter part of March, 1890, to June 27, 1890, that being the period of the Louisville Southern Railroad Company's occupation, and also during the second period, from June 27, 1890, to June 25, 1892, while the track was in use by the East Tennessee, Virginia & Georgia Railway Company. It will be noticed from these dates that the use by the first-named company terminated two years prior to the time when the receivers were put in possession. It was found and reported by the master that during this first period, the claim for which we are now considering, the current net earnings were more than sufficient to pay this claim; and it also appears that surplus earnings were paid over to the bondholders for interest, or appropriated to the purchase of equipment and for improvements of the road. Upon such facts it is contended by the counsel for the appellants that the proceeds of the sale of the mortgaged property may be appropriated to the interveners' claim for that period, notwithstanding the lapse of time intervening between the termination of it and the commencement of the foreclosure proceedings. But it would be unprecedented for the court, upon these facts merely, to concede the priority of a claim of such a character. There is no proof in the record to show that at the time in question the Louisville Southern Railroad Company was insolvent or approaching or apprehending insolvency. The principal of the bonded debt, secured by its mortgage, was not due, the interest was being paid, and there was no ground for any action of the trustee towards foreclosure. There was, therefore, no delay which enabled the mortgagor to disappoint its creditors. There is nothing to show that the Kentucky Central Railroad Company relied upon, or had any reasons for relying upon, the then current earnings as the source from which these track rentals were to be paid, and there was nothing in the nature of an equity which gave it any right to have those earnings applied in satisfaction of the installments of rent as they fell due. In fact, there was no equitable circumstance which does not exist in every case where a debtor applies his current income to the payment of one creditor rather than another.

Again, in order to constitute an equitable claim upon the current income, it must appear that the creditor asserting the claim did, in fact, or presumably, rely upon an expectation of being paid out of that fund. In the present case it is shown that from the beginning there was a question pending between the Kentucky Central Railroad Company and the Louisville Southern Railroad Company in regard to the construction of the contract on which the amount to be paid under the contract was to be ascertained. The parties took no steps at that time to have the question determined, and appear by mutual consent to have let its determination remain in abeyance. This action shows

clearly enough that the Kentucky Central Railroad Company did not rely upon or expect payment for this track service at the time or out of the current earnings, but must have understood that payment was postponed until some future time. It is a hopeless proposition to say that any equitable charge upon the current income arose upon facts like these. None of the facts upon which equitable claims have been maintained in suits of this character existed. All of the cases, from Fosdick v. Schall, 99 U. S. 235, to the present time, in which such claims have been recognized as having priority, rest upon the fundamental ground that there were peculiar circumstances, out of the ordinary course of business, which gave rise to a special equity, which it was the duty of the court to enforce.

With respect to the claim of priority for the track rentals during the period from June 27, 1890, to June 25, 1892, while the East Tennessee, Virginia & Georgia Railway Company was operating as lessee the road of the Louisville Southern Railroad Company, many of the above and still other considerations are presented. The lessee company was using this piece of track for its own purposes and its own business. It is true that, in a strictly legal sense, the lessor continued to be bound by the obligations of the contract; but, having assigned its interest therein to the East Tennessee, Virginia & Georgia Railway Company, with the knowledge of the Kentucky Central Railroad Company, followed by the recognition by the latter company of the assignment, the lessor company stood in the relation of surety for the payment of these charges. It did not control the operation of the road and had no control of the disposition of its earnings. During the foreclosure proceedings resulting in the sale of the property of the East Tennessee, Virginia & Georgia Railway Company and the distribution of its assets, this claim was not presented to the court, nor was any attempt made to collect it. It was known to all parties that the position of the Louisville Southern Railroad Company was that of surety merely. We do not say that the mere failure to assert this claim against the assets of the East Tennessee, Virginia & Georgia Railway Company during its winding up would, in and of itself, be a bar to the prosecution of the same claim against the surety if inherently it were one of an equitable character, but it is one of the circumstances which a court of equity may properly regard as having some bearing upon this claim as urged in the present condition of affairs. But beyond all this, and with respect to the claim for both of the periods we have been considering, the nature of the claim itself is of a kind which, upon the general current of authority upon the subject, disentitles it to a position of priority over the mortgage debt. It appears to us to stand upon no higher or better ground than claims for rentals of rolling stock, which are quite as indispensable to the daily operations of a railroad as are its tracks; and, with respect to track rentals for the period prior to the accession of the receiver, they are not, as a general rule, recognized as entitled to priority. Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824.

The facts in the present case clearly indicate that the Kentucky Central Railroad Company placed its reliance upon the general credit of the Louisville Southern Railroad Company and of the East Ten-

nessee, Virginia & Georgia Railway Company, rather than upon the expectation of displacing the priority of the mortgage lien, to adopt the language of Mr. Justice Shiras, in delivering the opinion of the supreme court in the case of Thomas v. Car Co.; or, as he elsewhere puts it in the same opinion, "must be regarded as contracting upon the responsibility of the railroad company, and not in reliance upon the interposition of a court of equity."

It further remains to be observed that much the larger portion of the interveners' claim is excluded by the operation of the rule in respect to the length of time prior to the appointment of a receiver the court will regard in the adjustment of equities of this sort. But for the reason that, upon the grounds already considered, we think no part of this claim can be given preference, it is not necessary to draw a line of discrimination or to canvass the rule upon this subject. It was discussed upon this, as well as several other of the aspects of this case, by Judge Lurton in delivering the opinion of this court in the case of Central Trust Co. of New York v. East Tennessee, V. & G. Ry. Co., 26 C. C. A. 30, 80 Fed. 624. There is no error in the decree appealed from, and it is affirmed, with costs.