### MERCANTILE TRUST CO. v. TENNESSEE CENT. R. CO.

(District Court, M. D. Tennessee, Nashville Division. January 3, 1921. Petition for Rehearing Denied March 3, 1921.)

#### No. 1104.

1. Receivers ⬳128—Lien of receivers' certificates limited by third terms.

Where, in a suit brought to foreclose a second mortgage on railroad property subject to the lien of the first mortgage, the trustee and bondholders under which were not made parties, an order appointing receivers authorized them to pay taxes, interest on the first mortgage

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

debt, and prior lien claims that there might be no default thereunder, and an order authorizing issuance of receivers' certificates and the certificates themselves specifically provided that they should constitute a lien prior to that of the second mortgage, but subordinate to that of the first mortgage, purchasers of such certificates have no standing to assert a lien superior to that of the first mortgage, because, owing to unexpected adverse conditions, resulting from the World War, the property cannot be sold, subject to the first mortgage, for sufficient to pay the court costs and expenses and obligations of the receivers.

2. Receivers ⊸128—Purchasers of receivers' certificates held without equity to assert preference over prior mortgage.

Purchasers of certificates issued by railroad receivers, with knowledge that they were issued for the express purpose of being used in payment of interest on first lien bonds to prevent foreclosure, or to make permanent improvements on the property for the benefit of all lienholders, have no equity as against such bondholders to assert priority of lien, and in effect require such bondholders to return the interest so received years later after conditions have materially changed.

3. Receivers ⊸128—Courts may, when necessary, make receivers' certificates prior in lien to existing incumbrances.

A court of equity, administering railroad property in a mortgage foreclosure case or creditors' suit, is charged with the duty of conserving and operating the property, so far as can practically be done, for the benefit of both public and private interests, and in the performance of this duty may, in a proper case, make such repairs, replacements, and betterments, and incur such operating expenses, as are essential to such results and make the certificates issued for money borrowed by the receivers for such purpose a lien on the corpus of the property, and so far as necessary prior to existing liens.

4. Receivers ⊸128—Receivers' certificates should be given priority over existing liens only when actually necessary.

Authority to disturb existing liens on railroad property for the purpose of securing receivers' certificates should be exercised with great care, and carried no further than actually necessary to attain the desired result.

5. Receivers ⊸128—Prior lienholder is entitled to hearing before displacement of lien by receivers' certificates.

Notice to prior lienholders is not essential before making an order authorizing receivers' certificates to have priority of lien, but in the absence of such notice they are entitled to full hearing before the order becomes effective, and they may then contest the necessity, validity, and effect of the certificates as fully as though the question were then for the first time presented for determination.

6. Receivers ⊸128—Court cannot enlarge security given receivers' certificates when issued by giving preference.

Where receivers' certificates were originally issued and acquired under an order expressly reciting that they should be subordinate to a prior lien, the court is not authorized, as against the holders of such prior lien, to enlarge the security by giving them preference over it.

7. Receivers ⊸128—Displacement of liens in favor of receivers' certificates held not necessary.

Under the rule that a court may displace prior liens in favor of receivers' certificates only so far as necessary to conserve the property and keep it in operation, when certificates issued under an order providing, and themselves expressly reciting, that they should be subordinate in lien to a first mortgage, can be sold, the necessity which alone warrants displacement of the lien of such mortgage does not exist.

⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. Receivers ☞128—Court under no duty to give holders of receivers' certificates greater lien than that contracted for.

In issuing receivers' certificates the court pledges its faith to the holders, that it will enforce for their benefit the lien which it creates on the property for their security; but it does not pledge its faith that it will thereafter give them an additional lien for which they did not contract, at the expense of other lienholders.

9. Receivers ☞155—"Current debt fund" rule not applicable to debts which were not expected to be paid from current earnings.

Under the "current debt fund" rule, if the current income of a receiver is diverted from the payment of his own current expenses or like prior current expenses of the railroad for the benefit of the bondholders. leaving such current expenses unpaid, the mortgage security is chargeable in equity with restoration of the fund so misapplied; but such rule has no application in favor of debts, even for current expenses, which were not contracted with the expectation of the parties that they were to be paid out of current earnings.

10. Receivers ☞155—Use of proceeds of receivers' certificates to pay interest on prior mortgage debt, held under the facts not diversion of current income.

Purchasers of certificates issued by railroad receivers in a suit for foreclosure of a second mortgage, who were authorized to pay interest on the first mortgage debt, other charges which were a lien prior to such debt, and to put and keep the property in good repair, the purpose being to prevent foreclosure of the first mortgage and sell the property subject thereto, *held* not entitled to have the certificates charged on the corpus of the property as a lien prior to the first mortgage, under the current debt fund rule, on the ground that such payments were an unwarranted diversion of receivership funds; such purchasers being chargeable with notice of the proceedings, that the receivers were authorized to make such payments. that the income was not pledged for payment of the certificates, and that it was not expected that they should be paid therefrom, but from the proceeds of the property when sold, on which they were made a lien prior to that of the mortgage in foreclosure.

11. Receivers ☞128—Receivers' income held not diverted as to holders of certificates.

Where receivers' certificates issued in a foreclosure suit are made a lien ahead of the mortgage in suit, subsequent payments of interest on a prior mortgage, for taxes,.improvements, etc., inure to the benefit of the holders of the certificates, who cannot justly complain of such payments as a diversion of income.

12. Receivers ☞155—Current debt fund rule applies only to payments to lienholders as such.

The current debt fund rule applies only to payments made to or for the benefit of lienholders as such, and payment by receivers of a debt held by bondholders, but having no connection with the ownership of the bonds, gives no right to displace their lien.

13. Receivers ☞155—Payment by receivers of rental to bondholders held not a "diversion of income."

Payment by receivers of a debt held by bondholders, as owners of a terminal, demanded as a condition to renewal of a lease to the receivers, was in the nature of additional rental and a current operating expense, and was not a "diversion of income" for the benefit of the bondholders.

In Equity. Bill by the Mercantile Trust Company, trustee, a Missouri corporation, to foreclose a general or second mortgage on the property of the Tennessee Central Railroad Company, a Tennessee corporation. Receivers appointed, and receivers' certificates authorized and issued. Petition by Fourth & First National Bank and First Sav-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ings Bank & Trust Company, of Nashville, Tenn., holders of receivers' certificates, against the Mississippi Valley Trust Company, a Missouri corporation, trustee under a prior lien or first mortgage on the property of the Tennessee Central Railroad Company, and the Southern Railway Company, a Virginia corporation, and the Illinois Central Railroad Company, an Illinois corporation, holders of the bonds thereby secured, for the purpose of having the receivers' certificates declared a lien upon the corpus of the railroad property prior to that of the first mortgage. Hearing on pleadings and proof. Petition denied. ·

Percy D. Maddin and J. J. Vertrees, both of Nashville, Tenn., for petitioners.

Wm. L. Granbery, of Nashville, Tenn., and T. M. Pierce, of St. Louis, Mo., for Mississippi Valley Trust Co.

Albert W. Akers, of Nashville, Tenn. (L. E. Jeffries, of Washington. D. C., of counsel), for Southern Ry. Co.

Charles N. Burch and H. D. Minor, both of Memphis, Tenn., and Robin J. Cooper, of Nashville, Tenn. (Blewett Lee, of New York City, of counsel), for Illinois Cent. R. Co.

SANFORD, District Judge. The petition of the Banks has been heard on pleadings and proof in so far as relates to the relief prayed against the Mississippi Valley Trust Co., trustee under the first lien mortgage, the Southern Railway Co., and the Illinois Central Railroad Co., hereinafter called the Railroad Companies, the bondholders thereby secured; the other matters incidentally involved not having been submitted for determination at this time.

[1] The underlying and outstanding facts of the situation presented are: The bill under which the receivers were appointed and the receivers' certificates issued was filed by the trustee under the general or second mortgage and sought a foreclosure of that mortgage alone, for the sole benefit of the second mortgage bondholders. Neither the trustee under the prior lien mortgage nor the bondholders thereby secured, were made parties or were before the court at the time the receivers' certificates were issued. The res then before the court for adjudication was not the entire mortgaged property, as covered by both mortgages, but merely the equity of redemption of the mortgagor as against the first mortgagee. See Miltenberger v. Logansport Railway, 106 U. S. 286, 307, 1 Sup. Ct. 140, 27 L. Ed. 117. It is expressly stipulated that it was the purpose of the proceeding to have the prior lien interest paid, to pay off all taxes, labor claims and other charges which would be prior to the first mortgage bonds, and to put and maintain the road in good repair. In the order appointing the receivers they were authorized to pay all interest which might become due upon bonds of the Railroad Company secured by mortgage or lien prior to the general mortgage; the effect of which would be to prevent any default in the payment of such interest and postpone the right to obtain a foreclosure of the prior mortgage. Morgan's Co. v. Texas Central Railway, 137 U. S. 171, 196, 11 Sup. Ct. 61, 34 L. Ed. 625; Contracting Co. v. Trust Co. (6th Cir.) 108 Fed. 1, 4, 17 C. C. A. 143. Furthermore in each order authorizing the issuance of the receivers' cer-

291 F.—30

tificates, it was specifically provided that they should be secured by a lien upon the corpus of the railroad property prior to the lien of the general mortgage, but subordinate as to the corpus of the property to the senior and underlying mortgage and lien. And it was so recited in the certificates themselves.

When the certificates were authorized it was not questioned but that the value of the railroad was much greater than the amount of the prior lien bonds, and it was not suggested that there was any necessity for displacing the lien of the prior lien mortgage in order adequately to secure the certificates or enable them to be negotiated by the receivers. And it is reasonably certain that had not the unexpected conditions resulting from the World War and the consequent disastrous results to railroad properties intervened, the railroad property could have been sold in the ordinary course of foreclosure, subject to the first lien mortgage, at a sufficient price to discharge all the court costs and expenses and obligations of the receivers. Furthermore the Banks, as holders of the receivers' certificates, did not at any time object to the postponements of the foreclosure sale, made primarily at the request and in the interest of the second mortgage bondholders, or to the continued payment by the receivers, under the original order of the court, of the interest from time to time accruing on the prior lien bonds; but, on the contrary, tacitly at least, acquiesced therein. And in their petition they now ask that the receivers continue to operate the road until further orders of the court and that the railroad be not sold at an open price until all debts of the receivers are paid. And having purchased receivers' certificates which, under the specific orders of the court set forth in their face, recited that they were subordinated to the first lien mortgage, they made no effort to have these certificates given priority over the first lien mortgage until after repeated unsuccessful attempts at sale had made it evident, some years after they had acquired the certificates, that under the still unsettled conditions resulting from the war, it was then impossible to sell the property, subject to the first lien mortgage, at a price which would discharge the obligations of the receivers and the court costs and expenses; and they have now brought the trustee and bondholders under the first lien mortgage before the court in the effort to have the receivers' certificates given additional security by way of priority over the first lien mortgage in direct contravention of the recitals in the order of the court and the face of the certificates themselves.

It is true that the recitals in the orders of the court that the certificates are to be subordinated to the lien of the prior mortgage are not binding upon the Banks as res judicata, for want of mutuality, neither the first mortgage trustee nor bondholders having then been before the court.

[2] On the other hand, in so far as money was advanced by the Banks on the receivers' certificates for the express purpose of being used in the payment of interest on the first lien bonds or other payments to or for the benefit of such bondholders, by way of permanent improvements on the railroad property or otherwise, this fact, of itself, neither creates an equity in behalf of the Banks as against the

bondholders, nor entitles the Banks to complain of the application of the proceeds of the certificates to the very purpose for which the money was advanced by them, and, in effect, to require the parties receiving these payments or benefits to be deprived of the same years later, after the conditions have materially changed. In Morgan's Railroad v. Texas Cent. Ry., supra, 137 U. S. at page 196, 11 Sup. Ct. 68, 34 L. Ed. 625, in which it was claimed that one who had advanced money to a railroad company for the payment of operating expenses, taxes and interest on mortgage bonds, by which the property had been preserved as a going concern, was thereby entitled to an equitable claim on the property prior to the lien of the bondholders, the court said:

"But if the advances could * * * be treated as having been specifically procured for, or specifically applied to, the payment of interest as such, * * * still such payment would afford no basis for the assertion of a preference as against the bondholders, * * * and the contention is wholly inadmissible that the bondholders, because they received what was due them, should be held to have assented to the running of the road at the risk of returning the money thus paid, if the company, by reason of unrealized expectations on the part of those who made the advances, should ultimately turn out to be insolvent and unable to go on. By the payment of interest, the interposition of the bondholders was averted. They could not take possession of the property, and should not be charged with the responsibility of its operation."

And in Contracting Co. v. Trust Co. (6th Cir.) supra, 108 Fed. at page 4, 17 C. C. A. 147, in which it was held, on the express authority of the Morgan's Railroad Case, that the fact that money was borrowed to pay interest upon matured mortgage coupons was no ground for giving a preference over the mortgagees, the court said:

"If a lender of money, for the express purpose of paying the current operating expenses of a railroad, and thereby keeping it a going concern, does not bring himself within the class of creditors entitled to a preference over an existing mortgage debt, as was expressly decided in Morgan's L. & T. R. & S. S. Co. v. Texas Cent. R. Co., it is difficult to see the higher equity of one who lends money to pay mortgage interest to prevent foreclosure over those who were thereby prevented from asserting the lien of their mortgage. Why mortgagees, who received thereby only what was due them, should now be required to pay back the money thus paid them to those who loaned the money to the railroad company for that very purpose, is not comprehensible."

It is earnestly contended, however, that the Banks are now entitled to the declaration of a lien on the railroad property prior to that of the first lien mortgage: First, under the general authority of a court of equity to displace fixed liens upon mortgaged property in favor of receivers' certificates when necessary for the continued operation of a railroad being administered by the court; and, second, independently of this question, upon the ground that the receivers' certificates are debts of the receivers' income, and that the income of the receivers having been diverted from the payment of such debts to the making of payments to and for the benefit of the first mortgage bondholders, they are now entitled, on the principle of restoration, to the declaration of a lien prior to the first mortgage.

[3] 1. A court of equity administering railroad property either in a mortgage foreclosure case or in a creditors' suit, is charged with the duty of conserving and operating the property, so far as can practi-

cally be done, for the benefit of both public and private interests, and in the exercise of this duty of conservation and operation may, in a proper case, make such repairs, replacements and betterments and incur such operating expenses as are purely essential to such results, and make the certificates issued for money borrowed by the receivers for such purposes a lien upon the corpus of the property, and, so far as necessary, prior to existing liens. Wallace v. Loomis, 97 U. S. 146, 152, 24 L. Ed. 895; Miltenberger v. Logansport Railway, 106 U. S. 286, 309, 1 Sup. Ct. 140, 27 L. Ed. 117; Union Trust Co. v. Illinois Midland Co., 117 U. S. 434, 454, 6 Sup. Ct. 809, 29 L. Ed. 963; Atlantic Trust Co. v. Chapman, 208 U. S. 360, 371, 28 Sup. Ct. 406, 52 L. Ed. 528, 13 Ann. Cas. 1155; American Brake Co. v. Pere Marquette Railroad (6th Cir.) 205 Fed. 14, 19, 123 C. C. A. 322.

[4, 5] The authority to disturb existing liens for the purpose of securing receivers' certificates should, however, be exercised with great caution and "carried no further than actually necessary to attain the desired result." American Brake Co. v. Pere Marquette Railroad, supra, 205 Fed. at page 19, 123 C. C. A. 322. It does not, it is true, depend upon consent or prior notice, where the circumstances are judicially equivalent to prior notice. Union Trust Co. v. Illinois Midland Co., supra, 117 U. S. at page 456, 6 Sup. Ct. 809, 29 L. Ed. 963. And in the absence of prior notice, it is sufficient if the prior lienholder be given full opportunity to be heard, on evidence, before the order becomes effective, as to the propriety of the expenditures and of making them a first lien. Union Trust Co. v. Illinois Midland Co., supra, 117 U. S. at page 456, 6 Sup. Ct. 809, 29 L. Ed. 963; American Brake Co. v. Pere Marquette Railroad, supra, 205 Fed. at page 19, 123 C. C. A. 322. While the court may, under some circumstances, charge the property with receivers' certificates in advance of the prior lienholders being made parties, it cannot deprive them of their priority of lien without giving them their day in court; and when they are brought before the court they become entitled to contest the necessity, validity and effect of the certificates as fully as if such questions were then, for the first time, presented for determination. If it then appears that the certificates ought not to have been made a charge upon the property superior to the prior lien, the contract rights of the prior lienholders must be protected; while, on the other hand, if it then appears that the court originally did what ought to have been done, even if the prior lienholders had been before it when the issuance of the certificates was authorized, the property should not be relieved from the charge made upon it, in good faith, for its protection and preservation. Union Trust Co. v. Illinois Midland Co., supra, 117 U. S. at page 460, 6 Sup. Ct. 809, 29 L. Ed. 963. And see Wallace v. Loomis, 97 U. S. 146, 24 L. Ed. 895. In other words, if the certificates are, without notice to the prior lienholders, originally given a prior lien and acquired on the faith thereof, the prior holders whose lien is thus displaced, may, upon being brought before the court, contest the provision giving them such priority; which will be set aside if it then appear that such priority ought not to have been originally given, but which will be confirmed if it then appear that such priority ought to have been given originally.

[6] This doctrine, however, applies only in cases in which the priority of lien is originally given when the certificates are authorized and they are purchased on the faith of such purported priority, and when, subsequently, after notice to the prior holder, it becomes a question as to whether the court should adhere to or set aside the action originally taken. And, in the very nature of things, it does not authorize the court, after the certificates have been authorized and acquired on the faith of a specified security, to thereafter enlarge the security of the certificates, even upon notice to prior lienholders, and confer upon the certificates gratuitously a priority of lien upon which they were neither originally authorized nor acquired; especially when they were originally issued and acquired upon an order expressly reciting that they should be subordinated to the lien thereafter sought, for the first time, to be displaced.

It is clear that the prior lienholder, when brought before the court upon notice of an application for the enlarged security, is entitled to contest, upon evidence, the necessity and validity of the lien then sought to be given the certificates; and that, by analogy to the rule of the Illinois Midland Co. Case, if it then appear that the court would not have been authorized originally, even upon notice, to have made the certificates a charge upon the property superior to the prior lien, the contract rights of the prior lienholders should be protected and such additional security denied the certificate holders.

[7] As already stated, the authority of the court, in discharging its duty in conserving and operating the railroad property, to make receiver's certificates a lien, when "necessary," upon the corpus of the property prior to existing liens, extends no further than is actually necessary to attain the desired result. American Brake Co. v. Pere Marquette Railway, supra, 205 Fed. at page 19, 123 C. C. A. 322. In this case, in determining the validity of an order which had purported to give receivers' certificates priority of lien over a mortgage, the court said:

"The crucial questions are those of fact: First, whether the circumstances necessitated (for the purpose of conserving and operating the railroad property) the borrowing of money for making the purchase and payments provided by the order; and, second, securing the money so borrowed in the way provided."

And it is clear that where the money which it is necessary to expend for the purpose of conserving and operating the railroad can be obtained without displacing the prior lien, the reason for the rule authorizing the court to displace the prior lien when "necessary" no longer exists.

Here, however—as would apparently be the case under every similar application—the undisputed facts show conclusively that there was no necessity for giving the receivers' certificates priority of lien over the first mortgage, since the Banks themselves were willing to, and did, take the receivers' certificates without such lien, and under the specific provision that they should, on the contrary, be subordinated to the first mortgage lien. Hence, regardless of the necessity for issuance of the certificates, in order to carry out the duty of the court in con-

serving and operating the property, as there were parties willing to take them on a security subordinate to the first lien mortgage, the court would clearly have been without authority to have provided, unnecessarily, that they should be issued, not merely upon the security upon which they could be negotiated, but with an additional and superfluous security, not essential to their negotiation, displacing the prior lien of the first mortgage bondholders and going entirely beyond the underlying necessity which is the only justification for such action.

It therefore follows, regardless of all other questions arising in connection with this branch of the case, that since the court would not have been authorized originally to have created a lien securing the certificates which should displace the lien of the prior mortgage, such lien cannot now, under the general equitable rule invoked by the Banks, be so declared.

[8] And in so far as the Banks took these certificates as a matter of public service, rather than as profitable business investments, and relying for payment not merely upon the security upon which, under the orders of the court, they were based, but generally, as they term it, upon the "credit of the court," this is unavailing where, as here, they are asking the court to confer now upon the certificates, to the prejudice of third parties, a security not embraced in the contract upon which, under the orders of the court, they were issued and acquired, and on the contrary, expressly denied them, that is, where they now have the entire security pledged to their payment by the order of the court and are asking for an additional security for which they did not contract. In issuing receivers' certificates the court pledges its faith to the holders that it will enforce for their benefit the lien which it creates on the property for their benefit. Mercantile Trust Co. v. Kanawha Railroad (6th Cir.) 58 Fed. 6, 7, 7 C. C. A. 3. It does not, however, pledge its faith that it will thereafter give them an additional lien for which they did not contract.

2. It is urged, as an alternative theory in behalf of the Banks, that their certificates are entitled to preferential payment on the ground that there has been such diversion of the receivers' income in payments made to and for the benefit of the two Railroad Companies, the only bondholders under the first lien mortgage, as to entitle the Banks, on the principle of restoration, to the declaration of a lien on the corpus of the railroad prior to the first lien mortgage. It is claimed that these diversions have been of four classes: the payment of interest to the two Railroad Companies on their bonds; the making of permanent improvements and betterments on the railroad property enhancing the value of the mortgage security; the payment of claims prior in lien to the first mortgage, likewise increasing the value of their security; and the payment to the two Railroad Companies of the Standard Trust Co. notes.

[9] It is a general rule that a railroad mortgagee when accepting his security impliedly agrees that the current debts of the railroad company contracted in the ordinary course of its business, shall be paid out of current receipts before he has any claim upon such income; and if the current earnings are used for the benefit of the mortgage credi-

tors, leaving unpaid such current "debts of the income" accrued within a limited time prior to a receivership, the mortgage security is, under what is commonly called the "current debt fund" rule, chargeable in equity with the restoration of the fund which has thus been improperly applied. Burnham v. Bowen, 111 U. S. 776, 783, 4 Sup. Ct. 675, 28 L. Ed. 596; St. Louis Railroad v. Cleveland Railway, 125 U. S. 658, 673, 8 Sup. Ct. 1011, 31 L. Ed. 832; Southern Railway v. Carnegie Steel Co., 176 U. S. 257, 276, 285, 20 Sup. Ct. 347, 44 L. Ed. 458; Central Trust Co. v. East Tenn. Railroad (6th Cir.) 80 Fed. 624, 628, 26 C. C. A. 30; Loveland v. Blair (6th Cir.) 222 Fed. 207, 210, 137 C. C. A. 521. And so if the current income of a receiver is diverted from the payment of his own current expenses or like prior current expenses of the railroad, for like benefit to the bondholders. Burnham v. Bowen, supra, 111 U. S. at page 782, 4 Sup. Ct. 675, 28 L. Ed. 596; Thomas v. Western Car Co., 149 U. S. 95, 113, 13 Sup. Ct. 824, 37 L. Ed. 663; Southern Railway Co. v. Carnegie Steel Co., supra, 176 U. S. at page 280, 20 Sup. Ct. 347, 44 L. Ed. 458; International Trust Co. v. Brick Co. (6th Cir.) 95 Fed. 850, 859, 37 C. C. A. 396.

I pass, without determination, the question whether the holders of receivers' certificates issued for money loaned a receiver come otherwise within the class of current creditors entitled to the benefit of the "current debt fund" rule, either by reason of the application of the proceeds of the loan to the payment of current expenses, or otherwise, and assume for present purposes that a receiver's certificate, for whatever purpose authorized, becomes a debt of the receiver entitled to the full benefit of the "current debt fund" rule under like circumstances as debts incurred directly for ordinary current expenses.

It is clear, however, that this "current debt fund" rule has no application in favor of any debts, even for current expenses, which were not contracted with the expectation of the parties that they were to be paid out of current earnings. Virginia Coal Co. v. Central Railroad, 170 U. S. 355, 365, 18 Sup. Ct. 657, 42 L. Ed. 1068; Southern Railway v. Carnegie Steel Co., supra, 176 U. S. at pages 285, 296, 20 Sup. Ct. 347, 44 L. Ed. 458; Central Trust Co. v. East Tennessee Railroad, supra, 80 Fed. at page 628, 26 C. C. A. 30; International Trust Co. v. Brick Co. (6th Cir.) 95 Fed. 850; 859, 37 C. C. A. 396; Rhode Island Locomotive Works v. Trust Co., supra, 108 Fed. at page 7, 47 C. C. A. 147. "Debts of this class must be such as were  *  *  *  contracted under circumstances reasonably indicating a reliance upon a proper application of the current income to their payment." Central Trust Co. v. East Tennessee Railroad, supra, 80 Fed. at page 628, 26 C. C. A. 34. Whether the debt was contracted upon the personal credit of the company without any reference to its receipts, or with the expectation of the parties that it was to be met out of the current receipts is to be determined in each case by all the circumstances attending the transaction. Southern Railway v. Carnegie Steel Co., supra, 176 U. S. at page 285, 20 Sup. Ct. 347, 44 L. Ed. 458. In Huidekoper v. Locomotive Works, 99 U. S. 258, 260, 25 L. Ed. 344—the second case following Fosdick v. Schall, 99 U. S. 236, 25 L. Ed. 339, in which the "current debt fund" rule was first stated—a debt due as part of the purchase

price of locomotives purchased by the railroad company under a contract by which the vendor retained title as security, was held to be merely a general unsecured debt not entitled to equitable priority. In Thomas v. Western Car Co., supra, 149 U. S. at page 112, 13 Sup. Ct. 824, 37 L. Ed. 663, in which a car company that had sold cars to the railroad company had reserved in the contract of sale the express right to terminate the contract and demand possession of the cars on any failure of the railroad to promptly pay the principal or interest of any of its bonds, the car company was denied priority over the bonds upon the principle of restoration, the court saying: "Such a provision shows that the car company was aware of the existence of the outstanding bonds, and protected itself by other methods than relying upon the possible order of a court which might appoint a receiver." In Bound v. South Carolina Railway (4th Cir.) 58 Fed. 473, 7 C. C. A. 322 (Fuller, Circuit Justice, presiding), steel rails had been sold to the railroad company upon a credit of eight months upon the express promise that the purchase would be paid for out of the earnings of the railroad. Before the expiration of this credit, however, the railroad company had paid interest on its mortgage bonds. Thereafter the seller extended the credit for a total period of eighteen months. It was held that the seller in granting this extension must have contemplated that during that period the interest falling due on the mortgage bonds was to be paid out of the earnings so that the road should remain in the hands of the railway corporation, and that the payment of interest on the bonds hence did not constitute a diversion of earnings within the preference rule in reference to current expenses incurred on the faith of the earnings. And in Rhode Island Locomotive Works v. Trust Co., supra, 108 Fed. at page 7, 47 C. C. A. 147, where the seller of locomotives to the railroad company had taken in part payment the notes of the railroad company secured by the endorsement of one of its stockholders, it was held that as the vendor, to the extent that it gave credit to the company, had taken "care that there should not be reliance upon current earnings as a basis to meet the obligation," but that there should be personal security therefor, it was not brought within the rule giving preference to current debts incurred with the expectation that they would be met out of the current earnings.

[10] The circumstances attending the issuance of the receivers' certificates in the instant case are these: As already stated, it was the purpose of the foreclosure suit to have the prior lien interest paid, and to pay off all other charges which would be prior to the first mortgage bonds, and to put and maintain the road in good repair. The banks by becoming the holders of the receivers' certificates were put upon inquiry as to all that had been done in the foreclosure suit, and charged with notice of all the subsequent proceedings. Mercantile Trust Co. v. Kanawha Railroad, supra, 58 Fed. at pages 5, 17, 7 C. C. A. 3; Gordon v. Newman (5th Cir.) 62 Fed. 686, 689, 10 C. C. A. 587 (White, Circuit Justice, delivering the opinion); Bernard v. Union Trust Co. (4th Cir.) 159 Fed. 629, 633, 86 C. C. A. 610, 16 L. R. A. (N. S.) 1118 (Fuller, Circuit Justice, presiding). Among other matters

of which the Banks were thus put upon inquiry and charged with notice, were the original order appointing the receivers in which they were authorized to pay all interest that might become due upon the first mortgage lien bonds; the first order authorizing the issuance of receivers' certificates by which the receivers were directed to pay interest then due upon the prior lien bonds, to pay taxes due, and to expend $150,000 in repairing and replacing bridges and trestles; and the subsequent decree, made before either Bank had acquired any receivers' certificates, by which the receivers were ordered to take the place of the Tennessee Central Railroad Co. under the lease contracts in reference to the terminal facilities owned by the Illinois Central Railroad and the Southern Railway and perform all the terms and conditions of said contracts during the period of the receivership, which involved as one of the terms of contract with the two Railroad Companies the payment of all the Standard Trust Co. notes held by them which might become due during the receivership. Two of these notes were paid before either Bank acquired any of the certificates. And all but two of them were subsequently paid before the Banks acquired the issue of the certificates which they now hold, the proceeds of which were used in large part in taking up their prior certificates; two notes having been paid since that time, which fell due, however, before their present certificates became due. Each issue of the certificates was not to mature for one year.

It is furthermore expressly stipulated that it was the purpose of the Banks in extending the credit to the receivers to assist them in meeting the imperative necessities of the road, for improving its condition generally, for rolling stock, improvement of the roadbed and such things as were absolutely indispensable to its existence, and to enable them to meet the prior lien interest and the rent to the Nashville Terminal Company and keep the road going, all under the orders of the court.

Furthermore neither the orders of the court nor the recitals in the certificates gave the holders any lien upon the earnings of the railroad in the hands of the receivers or pledged such earnings in any way to their payment. Nor have the Banks claimed that they expected that the certificates would be paid out of the income of the receivers.

And although the receivers continued the payment of interest on the prior lien bonds under the authority vested in them, paid from time to time, under orders of the court, taxes and other claims prior in lien to both mortgages, and made improvements on the railroad property itself, the Banks made no complaint of any of these matters as a diversion of the receivers' income or otherwise, or any application to the court to have the receivers' income applied to the payment of the certificates, until they filed their present petition about two years after they had acquired the issue of certificates which they now hold.

Under all the circumstances, I am constrained to conclude that these certificates were not acquired by the Banks with the expectation that they would be paid out of the current income of the receivers, which had not been pledged for that purpose, but on the contrary with the understanding that the court would continue, as theretofore, to apply

such current income to the payment of interest on the first mortgage bonds and the making of necessary improvements on the property from time to time, and with no expectation that the policy of the court in this respect would be changed or the court hampered in any way in the application of the current income of the receivers to such of these purposes as might be deemed advisable from time to time in the administration of the trust, leaving the Banks to rely for the payment of the certificates upon the specific security created for that purpose, to-wit, a second lien on the corpus of the railroad property, and with the expectation that upon foreclosure sale, subject to the first mortgage lien, the certificates would be paid out of the proceeds of sale before any payments were made to the second mortgage bondholders. And I hence conclude that the receivers' certificates did not become debts of the receivers' income within the meaning of the "current debt fund" rule, and that, all other questions aside, there is now no sufficient ground for applying this rule in their favor so as to create for them a lien upon the corpus of the property superior to that of the first lien mortgage.

[11] I may add, in this connection, that as a second lien was created on the corpus of the property to secure these certificates, the payments subsequently made by the receivers out of their current income to and for the benefit of the first mortgage bondholders by payment of interest on the first mortgage loan, improvements of the property and the like, did not operate solely to the benefit of the first mortgage bondholders, but at the same time to the benefit of the Banks themselves as holders of the receivers' certificates, since these payments either reduced the amount of the first lien debt which would otherwise have been ahead of the certificates, or increased the value of the property by which they were secured. The holder of a second lien cannot justly complain, as of a diversion of income, of payments made to and for the benefit of the holder of a first lien, prior in right to himself, especially when they operate also to his own benefit.

[12, 13] Furthermore, no prior lien could be declared in any event under the "current debt fund" rule by reason of the payment of the Standard Trust Co. notes, for two additional reasons: First, these notes were not held by the two Railroad Companies as bondholders under the first lien mortgage, but in separate and distinct capacities, just as if they had been different persons from the holders of the bonds. And whatever personal right of action there might be for the recovery of such payments if they had constituted a diversion of income, in a court of competent jurisdiction, clearly no payment made to them by the receivers in a matter wholly disconnected with their ownership of the first lien bonds could in any event serve as a basis for declaring a prior lien upon the mortgaged property itself by virtue of the "current debt fund" rule, which necessarily applies only in case of payments to or for the benefit of the bondholders as such. Second, under all the circumstances, the payment of these Standard Trust Co. notes was, in fact, part of the consideration of the rental by the receivers of the terminal properties. The two Railroad Companies had insisted upon the payment of these notes as they matured as a con-

dition of renewing the lease on the Terminal properties, and such payments, when authorized by the court, became, in effect, the payment of an additional rental, which was not in any sense a diversion of the income of the receivers for the benefit of the bondholders under the first lien mortgage, but a payment of part of the current operating expenses of the receivers for the rental of property used by them.

4. A decree will accordingly be entered adjudging that the Banks are not entitled under their petition to any relief against the Mississippi Valley Trust Co., the Illinois Central Railroad Company or the Southern Railroad Company; and for costs.